UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
BAILEY SHIPPING LIMITED,                                   :
                                                           :
                                   Plaintiff,              :        12 Civ. 5959 (KPF)
                                                           :
                        v.                                 :        OPINION AND ORDER
                                                           :
AMERICAN BUREAU OF SHIPPING, *et al.*,                     :
                                                           :
                                   Defendants.             :
                                                           :
----------------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

        Upon application by Defendants, the American Bureau of Shipping

("ABS"); its Greek affiliate, American Bureau of Shipping Hellas; and several

individual officers and employees of these corporations; the Court issued an

order to show cause why an anti-suit injunction against Plaintiff Bailey

Shipping's prosecution of a civil action in the courts of the Republic of Greece

should not issue.  (Dkt. #20).  For the reasons set forth in the remainder of this

Opinion, Defendants' application for preliminary injunctive relief is granted in

part and denied in part.  Specifically, Defendants' application for preliminary

injunctive relief is granted with respect to Plaintiff's claims that rely on a legal

duty on the part of Defendants to make truthful representations, including

(i) those based on Greek statutes regulating the activities of classification

societies, and (ii) those derived from international conventions on vessel

classification, as ratified into Greek parochial law.  Defendants' application is

denied, however, with respect to Plaintiff's claim based on the Greek consumer

protection law, which imposes liability for false representations irrespective of whether that representation was made negligently.

## FACTUAL BACKGROUND[1]

### A.   The Vessel Sale and the Discovery of Its Poor Condition

Plaintiff is a Marshall Islands corporation engaged in international shipping.  Defendants ABS and ABS Hellas are each "a classification society engaged in verifying that marine vessels and offshore structures comply with the rules that the classification society has established for design, construction, and periodic survey."  (Compl. ¶ 23).

---

[1]   The facts are drawn from the Complaint ("Compl."); Defendants' Memorandum of Law in Support of a Mandatory Foreign Anti-Suit Injunction ("Def. Br.") and its supporting exhibits ("Def. Br. Exh."); Plaintiff's Memorandum of Law in Response to Defendants' Order to Show Cause Why a Mandatory Anti-Suit Injunction Should Not Issue ("Pl. Br.") and its attached exhibits ("Pl. Br. Exh."); the first declaration of Plaintiff's Greek counsel, Costas Georgopoulos ("Georgopoulos Decl.") and its accompanying exhibits ("Georgopoulos Decl. Exh."); the second declaration of Plaintiff's Greek counsel ("2d Georgopoulos Decl."); the first declaration of Defendants' Greek counsel, John Markianos-Daniolos ("Markianos-Daniolos Decl."); the third declaration of Defendants' Greek counsel ("3rd Markianos-Daniolos Decl."); Defendants' Letter of August 24, 2012 ("Defs. Letter of August 24, 2012," available as Pl. Br. Exh. 1); the original writ filed in the Greek action ("Original Writ," available as Def. Br. Exh. 1), the amended pleadings ("Amended Writ," available as Georgopoulos Decl. Exh. 1); the transcript of the August 20, 2012 hearing on Plaintiff's motion to enjoin arbitration and Defendants' cross-motion to compel arbitration ("8/20/12 Tr."); and the transcript of the oral argument held on September 20, 2013, on Defendants' present application ("9/20/13 Tr.").

The Original Writ was supplemented by amended pleadings filed on September 3, 2013. (Georgopoulos Decl. ¶ 3).  The extent to which the Amended Writ departs from the Original Writ is not clear, as the pleadings were provided in Greek and only relevant excerpts were provided in English translation.  (*See* Georgopoulos Decl. Exh. 1-5 & English Translations).  These excerpts are not sworn or certified copies; Defendants' counsel advised the Court by e-mail dated September 18, 2013, at 4:55 p.m. that Defendants had "no objections to the request made by Bailey Shipping regarding the use of uncertified translations."  The Court notes that it lacks an English version of the entirety of the Amended Writ, and must rely on Plaintiff's representation that the translated excerpts accurately reflect the nature of Plaintiff's claims and allegations in the Greek action.  Plaintiff's counsel was not able, at oral argument, to clarify whether the content of the Original Writ remained intact, subject to supplementation via the Amended Pleadings, or had been superseded by those amended pleadings.  (9/20/13 Tr. 3:10-12).  The factual discussion relies on the Original Writ only for general background information, and draws discussion of the legal claims at issue in the Greek action exclusively from available excerpts of the Amended Writ.

Classification societies

> survey vessels in accordance with the technical
> specifications designated by themselves or by the flag
> state of the vessel, that grant to them the relevant
> authorizations.  On the basis of these surveys, on the
> one hand, they classify the vessels into categories and
> classes depending on their qualifications and abilities
> and on the other hand, by authorization of the vessel's
> flag state, they issue the safety certificates of the
> vessel provided by the international conventions and
> by the national law of the vessel's flag state (which in
> most of the cases incorporates the relevant
> international conventions).  Without these safety
> certificates the ship cannot operate.  Therefore the
> "class" as it is described in the certificates of class
> issued by the classification society, demonstrates the
> degree of safety of the vessel, and the trust that the
> ship is worth as regards the vessel's construction and
> mechanical suitability.  In addition, the granting and
> maintenance of the vessel's "class" by an approved
> classification society is a mandatory condition in law
> for the issuance of the vessel's safety certificates.

(Original Writ ¶ 1.2).  A classification society is responsible for identifying

deficiencies with respect to the relevant specifications imposed by their own

internal rules and by relevant domestic law and international conventions,

recording recommendations for coming into compliance, and suspending or

canceling a vessel's class and refusing to issue safety certificates if the vessel

fails to come into compliance.  (Original Writ ¶ 1.4).  Class certificates are also

relied upon by sellers of seagoing vessels: a "prospective buyer relies on … the

certificates of the ship" and the statements of the sellers in assessing the ship's

repair and seaworthiness.  (Original Writ ¶ 7).  Here, a series of international

conventions are implicated, including: the International Convention on Load

Lines, the International Convention for the Prevention of Pollution from Ships

("MARPOL"); and the International Convention for the Safety of Life at Sea ("SOLAS").  (Original Writ ¶ 1.5).  Each of these conventions has been ratified by and adopted into the parochial law of the Republic of Greece.  (*Id.*).

ABS was the classification society of record for the bulk and ore carrying vessel M/V MAX (formerly the M/V ZAIRA) (the "Vessel") before the sale that gives rise to this dispute.  (Compl. ¶¶ 4-8).  ABS surveyed the condition of the Vessel in February-March 2006, at Piraeus, Greece, and again in February 2007, at Rotterdam, Holland.  (Compl. ¶¶ 5-6).  In June 2006, Defendants issued a Certificate of Classification for the Vessel.  (Compl. ¶ 8).  ABS also issued international safety certificates pursuant to the relevant international conventions at various points in 2006.  (Original Writ ¶ 3.2(b)).  These survey reports and the certificate attested that the Vessel complied with the relevant specifications for the class to which ABS certified the Vessel.  (Compl. ¶¶ 25-28).

On August 16, 2007, Plaintiff acquired the Vessel from non-party Wave Navigation, an entity that had owned the Vessel since 2000.  (Compl. ¶¶ 3-4).  In March 2008, the Vessel sailed to Turkey for a periodic classification survey and scheduled repairs.  (Compl. ¶¶ 33-34).  The survey revealed substantial wear and tear to the Vessel above and beyond any attributable to the Vessel's sailing under Bailey's ownership.  (Compl. ¶ 35).  Bailey alleges that this additional corrosion and wear was "in direct conflict" with the Vessel's certificates and the results of the surveys conducted by ABS before Bailey's acquisition.  (Compl. ¶¶ 36, 39).

The Turkish shipyard had no capacity for the Vessel at this point and Bailey was forced to sail to Piraeus to continue the survey, where further unanticipated corrosion and damage was discovered.  (Compl. ¶¶ 38-39).  Bailey returned the Vessel to Turkey for the requisite repairs, as the Greek shipyard lacked capacity to perform repairs of such a scale.  (Compl. ¶ 40).  In Turkey, an additional survey discovered still more unanticipated corrosion and damage, requiring substantial repairs.  (Compl. ¶ 41).  These repairs took 12 months to complete.  (Compl. ¶ 42).

## B.    The Greek Litigation

Plaintiff filed two actions against Defendants in the Piraeus Multimember Court of First Instance in Piraeus, Greece in April 2012. (Original Writ at 5; Compl. ¶ 44). [2]   Plaintiff alleged that it was "absolutely impossible technically" for the wear and corrosion discovered in 2008 to have occurred during its ownership of the Vessel; thus, it contended, the condition of the Vessel at the time of sale must of necessity have been worse than attested in the surveys and certificates issued by Defendants.  (Original Writ ¶ 8).

The Amended Writ alleges three distinct classes of claims:

> The basis of [the Greek] lawsuit is [Plaintiff's] claims against the defendants arising out of their liability as service providers in accordance with [the Greek consumer protection statute.[3]]   Furthermore, all the defendants are liable, also or secondarily to

---

[2]    One writ in the Greek proceedings has apparently been withdrawn.  (Def. Br. 1 n.1).  The other, referred to here as the Original Writ, has since been modified by amended pleadings into the document referred to here as the Amended Writ.

[3]    Nomos (1994:2251) Prostasia Twn Katanalwtών [Protection of Consumers], EPHEMERIS TES KYVERNESEOS TES HELLENIKES DEMOKRATIAS (E.K.E.D) 1994, A:191 (Greece).

> compensation because by gross and inexcusable negligence violated their obligations arising out of international conventions (SOLAS, MARPOL, LOAD LINE CONVENTION etc.) that have been ratified by Greece and for violating Presidential Decrees 482/80 and 32/1997 (for authorization to Classification Societies and their duties in Greece of Greek Civil Code), art. 914 seq. cc.

(Georgopoulos Decl. ¶ 7; Amended Writ at 1). Plaintiff alleges, with respect to the consumer protection law, that classification societies and their employees had been found by Greek courts to fall within the category of "service providers" as contemplated by the statute. (Georgopoulos Decl. ¶ 10; Georgopoulos Decl. Exh. 1 ¶ 8). Plaintiff also asserts in the Amended Writ that Defendants "are liable in accordance with Art. 8 [of the consumer protection law] without [Plaintiff] having to prove fault on the part of [Defendants]." (Georgopoulos Decl. ¶ 8; Georgopoulos Decl. Exh. 1 ¶ 7). According to Plaintiff's Greek counsel, Plaintiff's

> claim against the Defendants under the Greek Consumer Protection law is one of strict liability as the consumer only has the burden of proving its damage and the causative link with the services rendered by the service provider and does not have to prove that the service provider acted with negligence or in breach of law or contract.

(Georgopoulos Decl. ¶ 9).

Plaintiff also alleges that Defendants are liable for violating duties stated under international conventions concerning shipping, such as the International Convention for the Safety of Life at Sea ("SOLAS"), the International Convention for the Prevention of Pollution from Ships ("MARPOL"), and the International Convention on Load Lines. (Georgopoulos Decl. ¶ 9; 9/20/13 Tr. 70:15-16).

Incorporating an excerpt from a scholarly paper on the liability of classification societies in Greek law,[4] Plaintiff claims that the relevant conventions impose a "general duty of care and protection" on classification societies, and that those duties were further ratified into Greek law by statute and presidential decree. (Georgopoulos Decl. ¶ 9).  Plaintiff alleges that "ABS breached its duty under Greek law to accurately survey and report the condition of the vessel." (9/20/13 Tr. 70:16-18).  Any violation of those duties — such as, for example, if the society "negligently or erroneously issues, attests, extends, or renews the certification of vessels" — is "per se unlawful" under Greek law and imposes liability on the faulty classification society.  (Georgopoulos Decl. ¶ 9 (internal quotation marks omitted)).  As Plaintiff's Greek counsel puts it in his declaration opposing Defendants' application for a preliminary injunction, "the classification societies are obliged to carry out their duties (*i.e.* the survey, examination and certification of vessels) diligently and not negligently." (Georgopoulos Decl. ¶ 14 (quoting Georgopoulos Decl. Exh. 1 ¶ 9)).

Finally, Plaintiff alleges that Defendants were subject to and violated "specific statutes in Greece that govern and regulate conduct of classification societies." (9/20/13 Tr. 71:3-4).  These statutes — distinct from the consumer protection statute and the Greek laws adopting the relevant international conventions into Greek parochial law — impose "certain standards of conduct in the work" of classification societies.  (*Id.* at 71:7).  Plaintiff contends that

---

[4]        Anthony M. Antapassis, *Liability of Classification Societies*, 11 ELEC. J. OF COMP. L. 3, 1 (2007), *available at* http://www.ejcl.org/113/article113-22.pdf.

Defendants, by failing to live up to the "statutory duty" under these laws regarding the standard of conduct required in their classification services, "breached their obligations" and are liable for the damage Plaintiff suffered as a result.  (*Id.* at 71:11-14).

Plaintiff's Greek counsel avers in his declaration that the "amended and correct lawsuit" now pending in Greece, "limited [Plaintiff's] liability claims against Defendants" to those deriving from the Greek consumer protection law and those sounding in tort based on Defendants' alleged violation of their duties under Greek statutes and international conventions.  (Georgopoulos Decl. ¶ 15).  However, the Original Writ did specify negligent misrepresentation claims in addition to the claims pled in the Amended Writ.  (*See, e.g.*, Original Writ ¶¶12-15).

Plaintiff seeks in the Greek proceeding $9,015,500 in damages for the repair costs, expenses, loss of hire, and loss of profits; a prison sentence of one year against each individual defendants as a means of enforcing money damages; and a penalty of €50,000 against each individual defendant. (Original Writ at 133).

## C.    The Demand for Arbitration and the Dispute Regarding Arbitrability

Several months after the commencement of the Greek action,[5]
Defendants informed Plaintiff that they regarded Plaintiff's action as subject to

---

[5]      There is some confusion over when the Demand for Arbitration was filed.  The original Complaint in this action alleges that the Demand for Arbitration was served on or about July 17, 2012.  (Compl. ¶ 45).  Attached to the Complaint is a Demand for Arbitration dated July 2, 2012.  (Compl. Exh. A).  Defendants, in support of their present application for an anti-suit injunction, present a Demand for Arbitration dated June 29, 2012.  (Def. Br. Exh. 4).  Defendants refer to this demand letter as "the letter of June

mandatory arbitration provisions contained in the underlying surveys on the basis of which the various certificates issued, and demanded arbitration in New York in accordance with the Rules of the Society of Maritime Arbitrators. (Def. Br. Exh. 4). On August 3, 2012, Plaintiff filed the Complaint in this action, seeking a declaratory judgment that it was not bound by any arbitration agreement with Defendants and an injunction against Defendants from pursuing arbitration. (Dkt. #1). During the pendency of the declaratory judgment action, Plaintiff appointed its party-appointed arbitrator to the arbitral panel, under protest and without waiving its objections to arbitration. (Def. Br. Exh. 6).

Defendants, maintaining that Plaintiff was subject to the arbitration provision incorporated in each of the implicated surveys and the class certificate, opposed Plaintiff's motion and cross-moved to compel arbitration pursuant to that provision. Defendants argued that, though Plaintiff and Defendants were not in privity and Plaintiff had never agreed to arbitrate any claims against Defendants, Plaintiff was nonetheless equitably estopped from relying on a contract for some purposes — here, as the basis for its claims of negligent misrepresentation — while rejecting an arbitration clause contained in that contract. (Def. 2012 Opp. 3-8). Plaintiff contended to the contrary that no contract existed in the first place; that even if such a contract existed, it was null and without effect under Greek law due to the misrepresentations

_____

29, 2013," though the year is presumably a typographic error. (Def. Br. 2 n.2). Regardless, no party contends that the Demand for Arbitration was untimely.

contained in the surveys and class certificate; that Plaintiff's claims sounded in tort under Greek law, not in contract; and that Plaintiff received no benefit at all from the underlying services Defendants rendered to the prior owner of the Vessel.  (Pl. 2012 Br. 11-12).

Nor did Plaintiff accept that it benefited from the contract by relying on it as the basis for its claims.  Plaintiff alleged that its claims were not based on the disputed surveys and certificates, but were "primarily premised on the Defendants' violations of Greek law and international conventions," which it claimed provided independent bases for suit.  (Pl. 2012 Br. 12-13).  Because Plaintiff did not allege that Defendants had violated merely their own internal rules but also numerous Greek and international laws, Plaintiff argued that its claims did not depend on interpreting the contract under which Defendants issued the surveys and certificates, and so it should not bound by that contract's arbitration clause.  (*Id.* at 14-15).

Oral argument was held on August 20, 2012.[6]  Plaintiff insisted that, contrary to Defendants' characterization, it was not "relying on" the underlying contract to provide its case because its claims were not "solely for negligent misrepresentation," but rather derived from "statutory violations" (8/20/12 Tr. 14:24-25), and that the "main thrust" of the Greek action was for "consumer protection violation" (*id.* at 25:8-9).  Plaintiff accepted that, were its claims exclusively based on negligent misrepresentation, it would be bound by

---

[6]     The case at that time was before the Honorable Richard J. Sullivan.  It was transferred to the undersigned on June 28, 2013.  (Dkt. #19).

the arbitration provision (*id.* at 14:10-14), but maintained that the "statutory violations" and the Greek "consumer protection cause of action" were independent of any negligent misrepresentation claim (*id.* at 15:17-18). Defendants argued that "the same acts are giving rise" to all alleged causes of action, and "[i]f there's a violation of one of these conventions, it's as a result of the negligent misrepresentation" that Defendants allegedly committed.  (*Id.* at 21:3-6).  Nonetheless, Defendants did not press for arbitration of all claims, accepting that the arbitration would not cover "Greek statutory law" (*id.* at 20:14-15), and acknowledging that Defendants would "defend those claims in Greece or in New York arbitration, it doesn't really matter" (*id.* at 17:16-17).

Though Plaintiff characterized its statutory and international law claims as distinct inasmuch as they were based on allegations that Defendants "could not have performed their job correctly" (8/20/12 Tr. at 27:7), the Court noted that alleging Defendants "had not performed their job correctly is the same as saying they misrepresented to us the condition of the vessel" (*id.* at 27:10-11). The Court ruled, however, only that "at the very least, there is a cause of action for negligent misrepresentation in the Greek action" (*id.* at 34:15-16), and that "at least" that cause of action must be heard in arbitration (*id.* at 35:3-5).  The Court took letter briefs from the parties on the proper disposition of the action (*id.* at 35:14-38:12), and, on August 27, 2012, ordered that it should be stayed pending the outcome of arbitration.  (Dkt. #14).

The Court suggested in the August 20, 2012 argument that the appropriate outcome might be to "split the baby and say [Plaintiff] can argue

the negligent misrepresentation claims here in New York but the statutory claims should be resolved in Greek courts." (8/20/12 Tr. 18:23-19:1). Plaintiff's counsel responded "that certainly would be a possible outcome," and Defendants' counsel responded that "it may well be" an appropriate outcome. (*Id.* at 19:3-8). As noted, Defendants' counsel had volunteered earlier in the proceeding that Defendants "would defend [the non-negligent misrepresentation] claims in Greece or in New York arbitration, it doesn't really matter." (*Id.* at 17:16-17). The Court did not rule regarding the pendency of the Greek action, noting that arbitration and the Greek proceeding "would be going on parallel tracks, conceivably," absent an application "to enjoin" Plaintiff from litigating the Greek action. (*Id.* at 32:16-19; *see also id.* at 35:1-5 (discussing anticipated hearings in the Greek action while ordering arbitration)).

## D.    Developments Since August 2012

The parties' conduct after the Court's August 20, 2012 Order evidenced an understanding that the New York arbitration and the Greek action would proceed in tandem. Shortly after the Court issued its August 20 ruling, Defendants, applying to stay this action during the pendency of the underlying arbitration, wrote that they "understood the Court's decision that only the negligent misrepresentation claims are arbitrable to mean that the claim asserted for violation for a Greek consumer protection statute and any claim not based on the classification certificate or surveys may proceed in Greece." (Defs. Letter of August 24, 2012, Pl. Br. Exh. 1).

Defendants sought to proceed with arbitration.  Plaintiff wrote the arbitral panel on November 13, 2012, informing the panel that Plaintiff intended to prosecute its claims in the Greek action and requesting a stay of the negligent misrepresentation claim subject to arbitration.  (Def. Br. Exh. 12). Defendants "opposed this application and asked for a prompt hearing."  (Def. Br. 5 (internal quotation marks omitted)).  Plaintiff responded, noting that its negligent misrepresentation claim was under its control, not Defendants', and that it should be permitted to pursue "ongoing, related proceedings between the parties in another country."  (Def. Br. Exh. 15 at 1).  Plaintiff further contended that "there is no aspect of [the] order compelling arbitration of the negligent misrepresentation claim that would be violated if the arbitration were stayed."  (*Id.* at 2).  The arbitral panel rejected Plaintiff's position and refused to stay the arbitration.  (Def. Br. Exh. 15).  A round of disputes over scheduling and discovery ensued.  (Def. Br. 6-7).

On August 9, 2013, Plaintiff e-mailed the arbitral panel, withdrawing its negligent misrepresentation claim "without prejudice."  (Def. Br. Exh. 19). Defendants opposed withdrawal, arguing that Plaintiff was obliged either to continue with the arbitration, submit the question of whether it had the power to withdraw unilaterally to the panel for adjudication, or agree to withdraw its claims with prejudice.  (Def. Br. Exh. 20).  Plaintiff insisted it had the ability to withdraw for the same reason that Defendants could not compel it to press its negligent misrepresentation claim at all.  (Def Br. Exh. 21).  Nor would withdrawal pose any risk of undermining the Court's August 2012 Order

regarding arbitrability: first, Plaintiff denied the panel's competence to adjudge such a claim, arguing that only the Court had the power to protect its own orders; second, Plaintiff argued that the Court's Order extended only to compelling Plaintiff, should it choose to pursue its negligent misrepresentation claim, to do so via arbitration. (*Id.*). The panel requested briefing on the issue (Def. Br. 7), which Defendants supplied and Plaintiff did not (*id.*; Def. Br. Exh. 22). Defendants argued in their submission to the panel, among other things, that terminating the arbitration would undermine the Court's August 2012 Order by permitting Plaintiff to pursue all its claims, including its negligent misrepresentation claim, in the Greek action. (Def. Br. Exh. 22 at 4). The panel has this issue under consideration at the present time. (Def. Br. 7).

Meanwhile, there has been substantial activity on the part of both litigants in connection with the Greek action. Both parties have submitted extensive discovery to the Greek court. (Markianos-Daniolos Decl. ¶ 11; Georgopoulos Decl. ¶ 18; 2d Markianos-Daniolos Decl. ¶ 8). The parties also appeared before the Greek court in February 2013 to request the adjournment of the hearing originally set for that date, and received an adjournment until September 24, 2013. (Georgopoulos Decl. ¶ 22; 2d Markianos-Daniolos Decl. ¶ 10). Defendants provided an expert witness for deposition testimony on August 20, 2013; that testimony was taken on August 26, 2013. (Georgopoulos Decl. ¶ 23; 9/20/13 Tr. 64:13-19).[7]

---

[7]     Plaintiff has advanced an argument — principally via the declarations of its Greek counsel and at oral argument — that Defendants have waived their right to seek injunctive relief from this Court by submitting to the Greek action without failing to

seek comparable relief in that forum.  (9/20/13 Tr. 19:3-18, 20:2-21:3; Georgopoulos Decl. ¶¶ 22-28).  By way of summary:

> THE COURT: All right.  So your waiver argument then is that the conduct of the parties after Judge Sullivan's decision evidences a common understanding that the negligent misrepresentation claims would not be pursued in any forum other than the arbitration but that a parallel proceeding would take place in Greece using other claims that did not depend on negligent misrepresentation and that everybody understood that that was going to happen, and so for you, the current application is inappropriate because you believe there is a 13-month or however long period of common understanding as to what Judge Sullivan's decision meant.

> [PLAINTIFF'S COUNSEL]: Absolutely.   Not only common understanding, common action, both in what was said in the arbitration, we've had two or three hearings, telephonic hearings with the arbitration panel, and it was clearly understood by everybody that they were trying to go through with their arbitration, we were trying to go through with the litigation in Greece.  This is no mystery.

(9/20/13 Tr. 21:4-21).  Defendants contend to the contrary that their participation in the Greek proceeding has consistently (and explicitly) been offered "only in the eventuality that [their] jurisdictional objection due to the arbitration clause and [the Court's August 20, 2012] [O]rder was dismissed."  (Markianos-Daniolos Decl. ¶ 8; *see also id.* at ¶ 9 ("[Defendants'] first defense, as presented in [their] pleadings dated 3 September, was a jurisdictional objection due to the arbitration clause.  All other allegations and defenses that followed were presented in the alternative, i.e. in case [Defendants'] objection to jurisdiction was dismissed, and this alternate pleading is allowed under the Greek Civil Procedure Code.")).

Plaintiff further argues that Defendants have "waived [their] right to make this application for an anti-suit injunction, because they did not put in their pleadings of [September 3, 2013] the request for stay of the Greek proceedings until the end of the arbitration proceedings."  (2d Georgopoulos Decl. ¶ 9).  Because Defendants failed to seek a stay of the Greek action and rather only requested an adjournment of the hearing originally scheduled for February 2013, Plaintiff submits that Defendants abandoned and are now procedurally barred from pressing a request to stay the Greek action.  (*Id.*).  Defendants acknowledge that they have never applied to the Greek court for a stay of those proceedings, but argue that this is irrelevant, given that Defendants have consistently "asked the Court to dismiss the [Greek] writ entirely ... due to, [among other reasons,] lack of jurisdiction in view of" the New York arbitration and the Court's August 20, 2012 Order.  (3rd Markianos-Daniolos Decl. ¶ 6).

The Court appreciates the energy and care with which the parties have contested this issue, especially given the complex procedural history of this case and the difficulties presented by the need to construe and argue Greek procedural rules.  On this record, the Court cannot conclude that Defendants have waived their ability to seek an injunction preserving their right to arbitrate the issues reserved to arbitration in the Order of August 20, 2012.  Should the Court conclude that the Greek proceedings would undermine that Order and obviate the New York arbitration, an injunction would be appropriate, regardless of the events that have transpired in the last 13 months.

E.      **The Order to Show Cause**

Defendants permitted 13 months to elapse without seeking to prevent Plaintiff from pursuing its claims in Greece, during which time the parties conducted discovery and prepared for the Greek trial.  Despite Defendants' assertion that Plaintiff's intent to go to trial "did not become finally apparent" until September 10, 2013 (Def. Br. 1), Plaintiff in fact made multiple submissions to the arbitral panel explicitly identifying Plaintiff's intent to go to trial.  (*See, e.g.*, Def. Br. Exh. 12 ("Bailey intends to vigorously pursue its claims in the Greek Actions."); Def. Br. Exh. 13 (requesting a stay of arbitration in favor of the Greek action and laying out the anticipated timeline for trial)).[8] Nor did Defendants make any haste to seek relief from this Court upon "finally"

---

However, the Court does note that the parties clearly evinced a mutual understanding that the Greek action was not barred or invalidated by the August 20, 2012 Order or the pendency of the New York arbitration.  Had Defendants believed that the Greek proceeding *should not proceed until* the New York arbitration concluded, they could and should have submitted that position to the Greek court as yet another "alternative" position, irrespective of their contention that the Greek proceeding *should be dismissed in light of* the New York arbitration.  In other words, Defendants' conduct evinced two distinct positions regarding the legal relationship of the two proceedings at issue.  First, Defendants' submissions to the Greek court unquestionably show their authentic belief that the Greek litigation should be dismissed and all the claims Plaintiff presses therein should be heard in arbitration.  That issue is not before the Court in this application — nor could it be, as the Order of August 20, 2012, clearly expresses that the Greek litigation may continue absent some application to enjoin Plaintiff from continuing to prosecute it.  Second, Defendants' failure to seek a stay in Greece manifested their belief that, should the Greek court conclude that some claims were not reserved to arbitration by the Court's August 20, 2012 Order, those claims would proceed in Greece.

[8]      In the September 20, 2013 oral argument, Defendants' counsel represented to the Court that "[n]othing happened in the Greek proceedings between April and September" of 2013, and until "the exchange of papers" on September 3 and 9, 2013, Defendants were unaware of the advance of events in the Greek proceeding.  (9/20/13 Tr. 44:3-5; *see also id.* at 44:12-13 ("All that has happened virtually in the last two or three weeks.")).  Later in the oral argument, however, Defendants' counsel admitted that Defendants spent the summer of 2013 taking and preparing witness statements and assembling the documentary record in preparation for the exchange of documents scheduled for early September 2013.  (*Id.* at 67:3-68:14).

discovering what Plaintiff had been advertising for a calendar year.  On the contrary, Defendants did not file any application with this Court until September 17, 2013 — exactly one week before the date on which the rescheduled Greek hearing date will at last take place.

On September 17, 2013, Defendants applied for an order to show cause why an anti-suit injunction prohibiting Plaintiff from prosecuting its claims in the Greek proceeding should not issue.  Given the brief period remaining before the Greek action begins, an abbreviated schedule for briefing and arguing this application was required.  A telephone conference was held that evening at which the Court set a briefing schedule and a hearing.  (Dkt. #20).  Defendants provided their memorandum of law (Dkt. #21), the declaration of their Greek counsel in support of their application (Dkt. #23), and supporting exhibits (Dkt. #22) to Plaintiff via e-mail on September 17, 2013, and filed the same on ECF on September 18, 2013.  Plaintiff filed its memorandum of law in opposition (Dkt. #25), and the declaration of its Greek counsel and its exhibits (Dkt. #26) on September 19, 2013.  Defendants filed their reply memorandum of law (Dkt. #28) and supporting declaration of Greek counsel (Dkt. #27) on September 20, 2013.  The parties met for a show cause hearing before the Court on the evening of September 20, 2013.  With the Court's permission, each party provided a final declaration by their respective Greek counsel after the September 20, 2013 oral argument.  (9/20/13 Tr. 80:22-81:11).

**DISCUSSION**

**A.    Applicable Law**

      **1.    Anti-Suit Injunction**

      "It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum." *Paramedics Electromedicina Comercial, Ltda.* v. *GE Med. Sys. Info. Technologies, Inc.*, 369 F.3d 645, 652 (2d Cir. 2004).  Such an injunction operates against "only against the parties, and not directly against the foreign court," *China Trade & Dev. Corp.* v. *M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987), but is nonetheless an "extraordinary power," *Garpeg, Ltd.* v. *United State*s, 583 F. Supp. 789, 798 (S.D.N.Y. 1984) that "should be 'used sparingly,'" *China Trade*, 837 F.2d at 36 (quoting *United States* v. *Davis*, 767 F.2d 1025, 1038 (2d Cir. 1985)), and "should be granted 'only with care and great restraint,'" *id.* at 36 (quoting *Canadian Filters (Harwich) Ltd.* v. *Lear-Siegler, Inc.*, 412 F.2d 577, 578 (1st Cir. 1969)).

      "In parallel litigation, the issue of comity is an important and omnipresent factor.  Although it is a consideration in federal and state litigation, it assumes even more significance in international proceedings." *Gen. Elec. Co.* v. *Deutz AG*, 270 F.3d 144, 159-60 (3d Cir. 2001).  "Since parallel proceedings are ordinarily tolerable, the initiation before a foreign court of a suit concerning the same parties and issues as a suit already pending in a United States court does not, without more, justify enjoining a party from proceeding in the foreign forum." *China Trade*, 837 F.2d at 35.

In the Second Circuit, a jurisdiction with a "restrictive" approach towards anti-suit injunctions, *Deutz*, 270 F.3d at 160, an injunction may only issue when two threshold conditions have been met and after the satisfaction of a five-factor test. *Paramedics*, 369 F.3d at 652. First, the parties in both actions must be identical. *China Trade*, 837 F.2d at 36. Second, resolution of the domestic suit must be "dispositive" of the foreign suit. *Id.*

If the threshold conditions are met, the Second Circuit has approved a set of factors courts should apply to assess whether an injunction should issue — the "so-called *China Trade* factors." *Travelport Global Distribution Sys. B.V.* v. *Bellview Airlines Ltd.*, No. 12 Civ. 3483 (DLC), 2012 WL 3925856, at *7 (S.D.N.Y. Sept. 10, 2012) (internal quotation marks omitted). Those factors include "whether the foreign proceeding threatens a strong public policy or the jurisdiction of the domestic forum," *Paramedics*, 369 F.3d at 654, which the Second Circuit has termed as having "greater significance" among the factors, *China Trade*, 837 F.2d at 36, as well as whether "the foreign action would be vexatious; … the proceedings in the other forum prejudice other equitable considerations; or … adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment," *id.* at 35.

"In addition to satisfying the *China Trade* test, recent Second Circuit case law has held that a party seeking a preliminary anti-suit injunction must also satisfy the traditional test for a preliminary injunction." *Dandong* v. *Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (LBS), 2011 WL 6156743, at *3 (S.D.N.Y.

Dec. 12, 2011), *aff'd in part, remanded in part sub nom. Lam Yeen Leng* v.

*Pinnacle Performance Ltd.*, 474 F. App'x 810 (2d Cir. 2012) (summary order)

(citing *Software A.G., Inc.* v. *Consist Software Solutions, Inc.*, 323 F. App'x 11,

12 (2d Cir. 2009) (summary order);  *In re Millenium Seacarriers, Inc.*, 458 F.3d

92, 98 (2d Cir. 2006)).

**B.    Application**

### 1.    The "Dispositive" Criterion Requires Analyzing the Substance, Not the Formal Label, of Each Claim

*China Trade* instructs that courts should begin by answering the two

threshold questions.  There is no dispute that the parties in the two actions are

identical.  (Def. Br. 14; Pl. Br. 7).  There is much more question regarding the

second threshold question: whether the domestic suit would prove dispositive

of the Greek action.

The ambiguity with respect to the dispositive effect of this proceeding is

twofold.  First, the proceeding that is actually before this Court is the original

action to enjoin or compel arbitration, stayed since August 27, 2012; the

disposition on the merits would come, if at all, in the arbitration ordered by the

Court on August 20, 2012.  Nonetheless a court order concluding that a given

issue is arbitrable is, under Second Circuit precedent, "dispositive" of a foreign

action regarding that issue for *China Trade* purposes "even though the

underlying disputes are confided to the arbitral panel and will not be decided

by the enjoining court."  *Paramedics*, 369 F.3d at 653.

The question remains, however, what "dispositive" means for *China Trade* purposes. The answer is far from straightforward. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), 2009 WL 3859066, at *6 (S.D.N.Y. Nov. 19, 2009) ("other courts have not articulated precisely what is meant by the term 'dispositive' in the *China Trade* inquiry"). If a domestic action must be identical to a foreign action for it to be "dispositive" under *China Trade*, then the New York arbitration cannot satisfy the criterion. The August 20, 2012 arbitrability ruling plainly did not cover all claims asserted in the Greek action. The Court held that "at the very least, there is a cause of action for negligent misrepresentation in the Greek action" (8/20/12 Tr. 34:15-16), and that "at least" that cause of action must be heard in arbitration (*id.* at 35:3-5). As set forth at length above, Plaintiff alleges numerous additional claims that are distinct from the negligent misrepresentation claim. The arbitration is not identical to the Greek action.

Plaintiff argues that this should end the analysis. As counsel put it at oral argument, Plaintiff construes the relevant inquiry as whether it is "pursuing the negligent misrepresentation cause of action in Greece or not. And if we are, then we violated [the August 20, 2012 Order].... [I]f we're not, then we haven't violated the order." (*Id.* at 25:3-6). Under this view of the "dispositive" criterion, there should "be no discussion of what the elements of proof were, what the elements of the claim were." (*Id.* at 25:12-13). Here, Plaintiff submits, "a claim, [a] cause of action" was reserved for arbitration by the August 20, 2012 Order, not a set of "issues," and unless that very claim is

litigated in the Greek action, the Greek action cannot be dispositive of the New York arbitration. (*Id.* at 41:10-12).

Alternatively, however, the "dispositive" criterion may be satisfied when a foreign proceeding will necessarily render a determination of the "core issue" at the heart of a claim appropriately decided only in a pending domestic action. (Pl. Br. 14). Defendants take this position:

> THE COURT: Do I understand you therefore to be saying that any claim that relies to any degree on the falsity — and by falsity, I simply mean the inaccuracy of any representation made by ABS — is subsumed by [the August 20, 2012] decision?
>
> [DEFENDANTS' COUNSEL]: That is correct.

(9/20/13 Tr. 76:12-16). Under this expansive view, the "substance" of the decision reserving negligent misrepresentation for arbitration is "the question of were the representations [Defendants] made on those certificates untrue" or "whether in fact [Defendants] made misrepresentations in the documents that had issued." (*Id.* at 75:4-5; 76:8-9). Any effort to prove that the documents in question were not accurate, Defendants argue, cannot proceed without undermining the New York arbitration — and thus necessarily Plaintiff must be enjoined from continuing the Greek action. (*Id.* at 75:13-18).

Courts in this Circuit have found anti-suit injunctions appropriate even when the claims in the foreign and domestic actions were not precisely identical, but were at least based on the same underlying dispute. *See, e.g.*, *Suchodolski Assocs., Inc.* v. *Cardell Fin. Corp.*, No. 03 Civ. 4148 (WHP), 2006 WL 10886, at *3 (S.D.N.Y. Jan.3, 2006) ("It is irrelevant that the Brazilian

Complaint asserts the abuse of control claim under Brazilian law instead of New York law."), *aff'd in relevant part, dismissed in part on other grounds*, 261 F. App'x 324 (2d Cir. 2008) (summary order); *SG Avipro Fin. Ltd.* v. *Cameroon Airlines*, No. 05 Civ. 655 (LTS) (DFE), 2005 WL 1353955, at *3 (S.D.N.Y. June 8, 2005) (rejecting the argument that a foreign action brought pursuant to Cameroon law was insufficiently identical to the claims in a domestic action proceeding under United States federal law, because "the parties' dispute" over the validity of the underlying agreement was before the courts in both forums). Courts have, however, refused to enjoin plaintiffs from pursuing foreign proceedings for failure to meet *China Trade*'s "dispositive" requirement when the foreign action "involves issues that were neither raised, nor could have been raised," in the domestic action.  *Computer Associates Int'l, Inc.* v. *Altai, Inc.*, 950 F. Supp. 48, 54 (E.D.N.Y. 1996), *aff'd*, 126 F.3d 365 (2d Cir. 1997).

From this set of precedents, the Court concludes that answering the "dispositive" question posed by *China Trade* requires a more searching review than the formalistic "claim" or "cause of action" analysis urged by Plaintiff.  It is not enough, to defeat an anti-suit injunction, to argue that a foreign action contains a tort claim perceived under a French statute instead of under Massachusetts common law.  The appropriate question is "whether the *substance* of the claims and arguments raised in the two actions is the same." *Vivendi Universal*, 2009 WL 3859066 at *6 (emphasis added).  This analysis, however, requires great precision in assessing the "substance" of the claims at issue in the foreign action.  Though it is not enough for the foreign action

simply to be pled under the relevant foreign law, *China Trade*'s threshold
cannot be satisfied unless a determination by the foreign court on the claim in
question would leave little or nothing for the domestic court to decide.
*Compare Advantage Int'l Mgmt., Inc.* v. *Martinez*, No. 93 Civ. 6227 (MBM), 1994
WL 482114, at *2 (S.D.N.Y. Sept. 7, 1994) (granting injunction when "the legal
issues in the two actions are, or at least in the absence of dismissal would be,
identical"), *with Aerotel, Ltd.* v. *IDT Corp.*, 486 F. Supp. 2d 277, 284 n.1
(S.D.N.Y. 2007) ("Even were both proceedings against the same defendants
based on the same actions, the different patents and different legal standards
would prevent this Court from giving effect to a decision by the foreign court
and would be grounds for denying the stay."), *and Ronar, Inc.* v. *Wallace*, 649
F. Supp. 310, 319 (S.D.N.Y. 1986) (denying an injunction where "the claims,
though partially dependent on certain common factual issues, are ultimately
distinct").

### a. The Duty-Based Claims Arising from the International Conventions and the Greek Regulatory Statutes Satisfy *China Trade*'s "Dispositive" Criterion

There can be no real argument that the arbitration, subject to the Court's
August 20, 2012 Order and without any attempt by either party to alter its
scope, was restricted to the negligent misrepresentation claim originally pled in
the Greek action.  Defendants' own exhibits in this application include the
arbitration panel's Discovery Order issued on August 8, 2013, instructing
Plaintiff to serve a "Statement of Claim for Negligent Misrepresentation" on
Defendants.  (Def. Br. Exh. 18).  Nor can either party dispute that the Greek

action includes claims that are not, on their face, identical to the misrepresentation claim subject to arbitration.  (*See* Def. Br. 14 ("Even though there are other issues pending in Greece....")).  Despite great efforts to argue otherwise at oral argument, Defendants' counsel ultimately conceded that the claims present in the Greek action cannot all be satisfied simply by a demonstration that Defendants negligently misrepresented the condition of the Vessel:

> THE COURT: ... So my point is, there is more to the claims in Greece than merely a showing of negligent misrepresentation.  Yes.
>
> [DEFENDANTS' COUNSEL]: Yes.

(9/20/13 Tr. 53:1-4).  Nonetheless the "substance" of the claims in the arbitration and the Greek action is subject to some dispute.  As discussed above, Plaintiff's Amended Writ in the Greek action raises three distinct claims: a violation of Greece's consumer protection law; a violation of Defendants' duties under international conventions, as ratified into Greek law; and a violation of Greek statutes regulating classification societies.  (Pl. Br. 10).  The Court concludes that these three claims cannot be treated equivalently for *China Trade* purposes: the New York arbitration would not be dispositive of the first claim, under the Greek consumer protection law.  The arbitration would, however, be dispositive of the latter two claims, under the international conventions and the Greek regulatory statutes.

To establish Defendants' liability under the latter two claims, Plaintiff must prove that Defendants failed in the duties imposed by the international

conventions and Greek regulatory statutes.  (*See* Georgopoulos Decl. ¶ 14
("[T]he classification societies are obliged to carry out their duties (*i.e.* the
survey, examination and certification of vessels) diligently and not
negligently.")).  In short, whether Defendants are liable under the relevant
international conventions and Greek statutes is a function solely of whether
Defendants were negligent in surveying the Vessel and misrepresented its true
condition when certifying its class.  (*See id.* (noting that a classification society
violates its duties under Greek law if it "negligently or erroneously issues,
attests, extends, or renews the certification of vessels")).  Plaintiff's claims
arising from Defendants' asserted duties under Greek law and international
conventions contain no element other than Defendants' alleged negligent
misrepresentation of the true condition of the Vessel before and at the time of
sale.

   The Court asked Plaintiff's counsel at oral argument to state the
elements of each claim pressed in the Greek action.  He represented that the
claims under the international conventions and under the Greek regulatory
statutes focus on whether "ABS breached its duty under Greek law to
accurately survey and report the condition of the vessel" (9/20/13 Tr. 70:16-
18), and whether Defendants failed to satisfy the "standards of conduct"
imposed by regulatory statute and thus "breached their obligations and caused
damage to [Plaintiff] by doing so" (*id.* at 71:7, 11-12).  For Plaintiff to prevail on
those claims, though they arise under foreign and international law, it would
have to prove that Defendants owed a duty of care to Plaintiff, that Defendants

were negligent in exercising that duty, that Plaintiff was harmed, and that Defendants caused that harm.  This is, of course, precisely the same factual demonstration and legal argument necessary to prevail on the negligent misrepresentation claim, which is, by the Court's August 20, 2012 Order, "reserved to arbitration."  *Paramedics*, 369 F.3d at 653.  The arbitral panel's ultimate decision with respect to Defendants' liability for its alleged negligent misrepresentation would necessarily, in consequence, dispose of the latter two claims.  Despite the differing legal regimes implicated, the "substance" of the actions is the same: a Greek court giving preclusive effect to such an arbitral award would settle these claims in the same way as had the arbitral panel. *China Trade*'s threshold requirements are clearly satisfied for the latter two claims.  *See Vivendi Universal*, 2009 WL 3859066, at *5 n.10 ("U.S. courts have readily held that decisions of U.S. courts that certain disputes must be submitted to arbitration are dispositive of parallel claims in foreign courts or arbitral tribunals relating to the same underlying disputes.").

> **b.    The Threshold Is Not Met With Respect to Plaintiff's Consumer Protection Claim**

The relationship between the New York arbitration and Plaintiff's claim in the Greek action arising from Greek's consumer protection law is less clear. Plaintiff's Greek counsel makes the following representations regarding this topic of Greek law: (i) the consumer protection law imposes liability on service providers (Georgopoulos Decl. ¶ 7.a); (ii) Plaintiff need not prove fault on the part of Defendants (*id.* ¶ 8); (iii) violations of the consumer protection law are strict liability offenses, requiring consumers to prove only "its damage and the

causative link with the services rendered by the service provider and … [not] that the service provider acted with negligence or in breach of law or a contract" (*id.* ¶ 9); and (iv) that the consumer protection law is a compulsory legal principle that "cannot be avoided, excluded or amended by private will/contract" (*id.*).  The translated excerpts of Plaintiff's amended pleadings in the Greek action also indicate that Plaintiff's claim before the Greek court now asserts that Plaintiff need not prove fault on the part of Defendants.  (Amended Writ ¶ 7; *see also* 9/20/13 Tr. 70:2-70:6 ("[Plaintiff doesn't] have to prove to the court, or to the jury, if the case may be, that there was any intent, any act of fraud, any negligence, willfulness or anything else.  [Plaintiff] only [has] to prove that these documents were false.")).[9]

    Based on the above understanding of the state of the law, the New York arbitration is not "dispositive" of Plaintiff's claim arising under the Greek consumer protection law.  For Plaintiff to prevail in the New York arbitration, it would have to make demonstrations totally irrelevant to the consumer

---

[9]     The Court notes that this characterization of the consumer protection law departs significantly from that in Plaintiff's Original Writ.  There, quoting the statute, Plaintiff asserted that the statute imposes liability on any service provider "for any damage caused *through fault* in the course of providing the services."  (Original Writ ¶ 16.1 (emphasis added)).  Plaintiff alleged in the Original Writ that Defendants provided a service in the statutory sense by surveying and certifying the Vessel, causing Plaintiff's injuries by inducing them to buy the Vessel in the first place (Original Writ 16.4), and that these services were faulty (and thus should impose liability for Plaintiff's damages) due to Defendants' "gross negligence" (Original Writ ¶ 16.5).

    However, despite several opportunities to do so, Defendants did not argue that the consumer protection law in fact requires a showing of negligence.  On the contrary, at oral argument Defendants' counsel accepted that the consumer protection law required only a determination of whether "the representations [Defendants] made on those certificates [were] untrue."  (9/20/13 Tr. 75:4-5).  The Court will thus accept the representations of both parties that the Greek consumer protection law requires *only* a showing of falsity, not of fault; Plaintiff need not show that Defendants had or violated any duty of care to prevail on this claim.

protection claim: absent an underlying fault criterion, whether Defendants committed negligent misrepresentation is simply unrelated to the factual and legal elements of Plaintiff's consumer protection claim.[10]   Nor would Plaintiff's success on the consumer protection law claim in the Greek action have any effect on the arbitration: even having obtained a judgment that the representations at issue were false and that Plaintiff was injured based on their falsity, Plaintiff would still be compelled in the arbitration to show that Defendants had acted negligently in violating a relevant duty of care, none of which elements the Greek court would have any reason to consider in the context of the consumer protection claim.   The substance of the consumer

---

[10]   It is possible the parties are both mistaken regarding whether a fault criterion exists in the consumer protection law.  If so, Defendants failed to sustain their burden of demonstrating that a preliminary injunction is appropriate, *Rodriguez* v. *DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999).  Nonetheless, the Court notes that even were the parties to discover that a claim under the Greek consumer protection law indeed requires a showing of fault, the consumer protection claim still likely would not satisfy *China Trade*'s "dispositive" criterion.

Unlike the two claims discussed above, an arbitral award on the merits of the negligent misrepresentation issue might not actually "dispose" of the consumer protection claim. The consumer protection claim apparently has independent elements, such as whether Defendants were "service providers" and Plaintiff a "consumer" within the contemplation of the statute.  Should Defendants prevail in arbitration, presumably the preclusive effect of that judgment would automatically dispose of the consumer protection allegations, just as it would Plaintiff's other claims in the Greek action — as Plaintiff could not win on a claim containing a fault element when Defendants had been found faultless in arbitration.  However, should Plaintiff prevail, it probably could *not* secure a judgment on the consumer protection claim with the same immediacy.  On the contrary, the independent elements of the consumer protection claim would likely still require the parties to litigate that dispute.

In other words, it seems likely that one outcome of the arbitration would dispose of the consumer protection claim, while the other outcome probably would not.  In this circumstance, the arbitration might not be "dispositive" of the consumer protection claim, irrespective of its overlap with negligent misrepresentation.  *See, e.g., Aerotel, Ltd.* v. *IDT Corp.*, 486 F. Supp. 2d 277, 285 (S.D.N.Y. 2007) ("While a decision that any of these three parties *owns* the invention, if given effect in the other litigation, would resolve the question in favor of both sets of defendants, a decision to the contrary would not.  Instead, it would merely return the case to the other venue to decide ownership as to the other potential owners as presented as a defense." (emphasis in original)).

protection claim does not sufficiently overlap with the negligent misrepresentation claim for its consideration by the Greek court to undermine the arbitration.

In sum, the *China Trade* threshold conditions are met for Plaintiff's claims arising from international conventions regarding international shipping as ratified into Greek law and Greek regulatory statutes governing classification societies, but they are not met with respect to Plaintiff's consumer protection claim.

### 2.   The Discretionary *China Trade* Factors Counsel Towards Granting an Injunction

As discussed above, the *China Trade* threshold conditions are satisfied for two of Plaintiff's claims in the Greek action.  *China Trade* set forth five factors that courts are to weigh once the threshold criteria are met:

> (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*Travelport Global Distribution Sys. B.V.* v. *Bellview Airlines Ltd.*, No. 12 Civ. 3483 (DLC), 2012 WL 3925856, at *7 (S.D.N.Y. Sept. 10, 2012) (quoting *China Trade*, 837 F.2d at 35).  The Second Circuit has identified the first and third of these factors as having "greater significance."  *China Trade*, 837 F.2d at 36. "However, … *all* of the additional factors should be considered when determining whether an anti-suit injunction is warranted."  *Karaha Bodas Co.,*

*L.L.C.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007) (emphasis in original).

Defendants acknowledge that there is no threat to this Court's jurisdiction implicated here. (Def. Br. 14-15; *see also* Pl. Br. 12). The first factor, however, is contested. Defendants argue that "[t]he enforcement of arbitration clauses, like forum selection clauses, is a strong public policy of American courts." (Def. Br. 15). Plaintiff responds that the Court "has already considered policy issues in relation to arbitration and ruled that only the negligent misrepresentation claim is subject to arbitration. Thus, [Plaintiff's] prosecution before the Greek court of its claims other than for negligent misrepresentation does not frustrate the policy of the New York courts." (Pl. Br. 12).

In so arguing, Plaintiff fails to appreciate the identity of legal issues between the arbitration and the statutory and international convention claims in the Greek action. To be sure, the Court's August 20, 2012 Order concluded that the negligent misrepresentation claim should be arbitrated, without ordering the other claims to go to arbitration. The injunction sought here would not alter that Order: no claim would be heard by an arbitral panel other than the negligent misrepresentation claim reserved to arbitration in the August 20, 2012 Order. Plaintiff's argument does not, however, confront the question actually presented here: is there an implicated policy that the Greek action would derogate?

"It is difficult to overstate the strong federal policy in favor of arbitration,"
*Arciniaga* v. *Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006), and the
"federal policy favoring the liberal enforcement of arbitration clauses ... applies
with particular force in international disputes." *Paramedics*, 369 F.3d at 654.
Though "[p]rinciples of comity weigh heavily in the decision to impose a foreign
anti-suit injunction ... where one court has already reached a judgment — on
the same issues, involving the same parties — considerations of comity have
diminished force." *Paramedics*, 369 F.3d at 654-55.  Here, the Court's August
20, 2012 Order regarding Plaintiff's claim of negligent misrepresentation
disposes of those issues and reserves them for decision by an arbitral panel.
For the reasons discussed above, the latter two claims raised in the Greek
action implicate the identical questions posed by the negligent
misrepresentation dispute.  In consequence, permitting the Greek action to go
forward with respect to those claims would directly undermine that Order —
and, indeed, the federal policy favoring arbitration as a whole.  *See, e.g., Storm
LLC* v. *Telenor Mobile Commc'ns AS*, No. 06 Civ. 13157 (GEL), 2006 WL
3735657, at *8 (S.D.N.Y. Dec. 15, 2006) ("To the extent that the [foreign]
litigation ... threatens to disrupt the arbitration process, it would have the
effect of frustrating [the federal policy favoring arbitration].").

Defendants also concede that the second and fourth factors offer them
no support, but argue that the fifth factor, regarding the possibility of
conflicting results, counsels toward granting the injunction.  In this regard,
Defendants observe that "the courts realize the impossible position into which

a litigant may be placed if faced with conflicting rulings by two separate tribunals, and that such a result is to be avoided." (Def. Br. 15).  Plaintiff responds that "there is no identity of claims between the Greek proceeding and the New York arbitration.  Thus, there is no threat of inconsistency or race to judgment.  Rather, granting an anti-suit injunction at this late date would no doubt lead to delay, inconvenience and expense … [and] it would be highly prejudicial to [Plaintiff] for the Court to do so."[11]

The Court has already ruled that there is an important overlap between the arbitration and Plaintiff's second and third claims in the Greek action. Given the mandatory arbitrability of the negligent misrepresentation dispute that is the substance of these claims in the Greek action, the Greek action "creates a serious risk of inconsistency and a race to judgment.  Absent an anti suit injunction, the [foreign court] could go forward and try the case notwithstanding this Court's determination that arbitration is mandatory." *Travelport Global Distribution*, 2012 WL 3925856 at *8.  The possibility of conflicting judgments — especially when the underlying issues have been reserved for arbitration — counsels strongly in favor of granting the injunction. *See, e.g., Amaprop Ltd.* v. *Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853 (PGG),

---

[11]    Plaintiff also submits that such an injunction would deprive it of any forum to litigate its claims, as the Court previously ruled that the negligent misrepresentation claim should be arbitrated and would now enjoin Plaintiff from seeking adjudication of its remaining claims in court.  The Court disagrees.  First, Plaintiff remains free to litigate its claim regarding the Greek consumer protection statute.  Second, it is not at all clear that Plaintiff is prohibited from counter-claiming its remaining claims in the pending New York arbitration.  Third, even this preliminary injunction would only prevent Plaintiff from pressing the enjoined claims until the arbitration concludes; should Plaintiff prevail in the arbitration, it would then be free to seek effect for that ruling under the law of Greece.

2010 WL 1050988, at *8 (S.D.N.Y. Mar. 23, 2010) (granting an anti-suit injunction in favor of a pending arbitration, in part because of "the possibility of inconsistent judgments if this action is permitted to continue in parallel jurisdictions").

Admittedly, this decision will occasion duplication of effort and additional expense by compelling the parties to conduct both a Greek trial with respect to the consumer protection claim and an arbitration with respect to the negligent misrepresentation claim.  The arbitration will likely be followed by a subsequent application to this Court to confirm or deny the arbitral award and, in the event any award were confirmed, by an effort to obtain effect for that award in the Greek court.  However, though Plaintiff argues that it alone "has spent a significant amount of money … in preparing and presenting its case before the Greek court over the course of the last year," Plaintiff's counsel avers that Defendants have been equally active in the Greek action: they have presented a witness and filed extensive pleadings, "voluminous" documents, and expert reports.  (Georgopoulos Decl. ¶¶ 23, 25, 27).  In Plaintiff's counsel's own words, "[a]ll the evidence is in the hands of the Greek Court and the only thing that remains to be done is the examination of one witness by each party on September 24, 2013."  (*Id.* ¶ 29).

Plaintiff no doubt truthfully complains of its significant investment in the Greek action, but according to its own submissions, Defendants have made the same investment.  Meanwhile, the pending arbitration has seen extensive procedural wrangling for almost a full year, while Plaintiff did not seek to

withdraw its claim from arbitration until August 2013.  In short, the actions under consideration have already seen extensive duplication, with the complicity and accession of both parties, since August 2012.  The prospect of further duplication is not enough to invalidate the other factors counseling in favor of enjoining, in part, Plaintiff's prosecution of the Greek action.

### 3.    A Preliminary Injunction Is Appropriate[12]

Having concluded the *China Trade* test is satisfied for Plaintiff's claims under Greek regulatory statutes governing classification societies and international conventions regarding international shipping as ratified into Greek law, the Court must now determine whether a preliminary injunction should issue.[13]  As with any preliminary injunction application, a party seeking an anti-suit injunction must satisfy the "ordinary test for a preliminary injunction."  *Software AG, Inc.* v. *Consist Software Solutions, Inc.*, 323 F. App'x 11, 12 (2d Cir. 2009) (summary order).

---

[12]    Though Defendants' brief is entitled "Memorandum of Law in Support of Mandatory Foreign Anti-Suit Injunction," the brief itself explicitly notes that it seeks only to enjoin Plaintiff "from pursuing a litigation in Greece" (Pl. Br. 1), and argues the traditional standard for preliminary injunctions.  A "preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits.  A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act."  *Tom Doherty Associates, Inc.* v. *Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (internal citation omitted).  Given the nature of Defendants' argument and the Second Circuit's instruction that preliminary injunctions are appropriate in this context, *see Ibeto Petrochemical Indus. Ltd.* v. *M/T Beffen*, 475 F.3d 56, 65 (2d Cir. 2007), the Court will construe Defendants' motion as an application for a preliminary injunction.

[13]    The discussion below applies only to the two duty-based claims for which the *China Trade* test is satisfied; Plaintiff's claim under the Greek consumer protection law does not satisfy that test and so the Court need not evaluate it under the traditional preliminary injunction standard.  The Court notes, however, that because permitting the Greek consumer protection claim to proceed cannot dispose of or undermine the pending New York arbitration, no harm will result to Defendants from the Greek action, much less the imminent and irreparable harm required to justify a preliminary injunction.

> A party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

*In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 98 (2d Cir. 2006). The Court concludes that a preliminary injunction is appropriate here.

### a. Defendants Have Shown the Likelihood of Irreparable Harm

"'Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.... Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Freedom Holdings, Inc.* v. *Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodrigues* v. *DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999)) (alteration in original). "To satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Id.* (quoting *Rodriguez*, 175 F.3d at 234-35).

Defendants contend that the irreparable harm requirement is "met with a showing that [Defendants are] being forced to litigate issues in a Greek court that... [have been] ordered to be arbitrated in New York." (Def. Br. 10). Courts have indeed found that losing a right to arbitration constitutes irreparable

harm.  *See, e.g., Converse, Inc.* v. *Am. Telecommunications, Inc.*, No. 06 Civ.
6825 (PKL), 2006 WL 3016315, at *5 (S.D.N.Y. Oct. 23, 2006); *Paramedics
Electromedicina Comercial Ltd.* v. *GE Med. Sys. Info. Technologies, Inc.*, No. 02
Civ. 9369 (DFE), 2003 WL 23641529, at *12 (S.D.N.Y. June 4, 2003), *amended
in part*, No. 02 Civ. 9369 (DFE), 2003 WL 21697884 (S.D.N.Y. July 21, 2003),
*aff'd and remanded sub nom. Paramedics Electromedicina Comercial, Ltd.* v. *GE
Med. Sys. Info. Technologies, Inc.*, 369 F.3d 645 (2d Cir. 2004); *see also
Reliance Nat. Ins. Co.* v. *Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 391
(S.D.N.Y. 1997).

Plaintiff failed to address the question of irreparable harm in its briefing.
Eight hours after the deadline for its submission, Plaintiff provided three cases
to the Court and to Defendants via e-mail, with a heading identifying the issue
to which Plaintiff apparently believed each case related.  Under the heading
"Irreparable Harm in the Context of a Request for an Anti-Suit Injunction,"
Plaintiff provided a case from this District that held, in the context of a party
seeking to enjoin a foreign litigation in favor of an arbitration, that "any harm
to [the movant] is speculative … [before the foreign court] has awarded the
relief sought by [the non-moving party] or directed the outcome(s) of which [the
movant] complains."  *Empresa Generadora De Electricidad Itabo* v. *Corporacion
Dominicana De Empresas Electricas Estatales ("CDEEE")*, No. 05 Civ. 5004
(RMB), 2005 WL 1705080, at *9 (S.D.N.Y. July 18, 2005).  The issue in
*Empresa*, however, was whether the movant would inadvertently waive its right
to arbitrate at all by participating in potential future court-directed activities.

*Id.* Plaintiff has not suggested — nor could it, in the face of the Court's August 20, 2012 Order, reserving the negligent misrepresentation issue for arbitration — that Defendants have waived or in any way impaired their right to arbitrate. On the contrary, the issue here is whether the pendency of the Greek action will, by providing a judgment regarding claims whose substance is identical to the negligent misrepresentation claim properly before the arbitral panel, obviate the right to arbitration that Defendants unquestionably possess. Given the strength of the federal policy favoring arbitration, "[t]he deprivation of the right to arbitration is of particular weight." *Comverse*, 2006 WL 3016315, at *5. The Court has already held that permitting the Greek action to proceed with respect to the two duty-based claims identified above would indeed undermine the pending New York arbitration, constituting irreparable harm to Defendants.

*Empresa* also casts doubt on whether irreparable harm can ever be found when the movant delayed in bringing the action. *Empresa*, 2005 WL 1705080, at *8. *Empresa* justified this claim by quoting, out of context, an observation from a Second Circuit case discussing the presumption of irreparable harm normally adduced from a high probability of consumer confusion in a trademark case, *Tough Traveler, Ltd.* v. *Outbound Products,* 60 F.3d 964, 968 (2d Cir. 1995), and a case from the District of Delaware that disapproved of an "unexplained delay" in a movant's assertion of its rights, *Plessey Co. plc* v. *Gen. Elec. Co. plc*, 628 F. Supp. 477, 500 (D. Del. 1986). *Tough Traveler* is self-evidently irrelevant, as this action does not implicate the

presumptions at issue in a trademark dispute.  Though Defendants could have

applied with more haste for the relief they seek here, the ongoing dispute over

the arbitration throughout the late summer (Def. Br. Exh. 15-22), and the

parties' recent filing of their final submissions in the Greek court (Georgopoulos

Decl. ¶¶ 23-27), provide adequate explanation for the delay in seeking this

relief.[14]

The Court concludes that Defendants have adequately demonstrated the

imminent likelihood of irreparable harm with respect to the two duty-based

claims identified above.

### b.    Defendants Have Shown Likelihood of Success on the "Merits"

It is not clear how the "likelihood of success" element of the traditional

preliminary injunction test applies in a case, like this, involving the enjoining a

party from pursuing a foreign litigation in favor of an arbitration.  Determining

Defendants' likelihood of success on the merits might be construed as

requiring an assessment of whether Defendants will prevail on the underlying

negligent misrepresentation claim.  However, given the Court's Order

concluding that that claim is mandatorily arbitrable, the merits of the negligent

misrepresentation claim should be outside the scope of the Court's

examination in the same way that an arbitrator's reasoning is immune from

---

[14]    This is not to say that the Court approves of Defendants' decision to file this injunction one week prior to the Greek proceeding.  It does not.  However, given the complex and extensive interactions between the parties and with the Greek court over the last year, the Court cannot conclude that Defendants were simply failing to defend their interests in a way that waived their right to seek injunctive relief.

review by a court determining whether to confirm an arbitral award.  *See, e.g.*, *Oxford Health Plans LLC* v. *Sutter*, 133 S. Ct. 2064, 2068 (2013).

Alternatively, Defendants urge that, like courts in the Ninth Circuit, the Court should as a rule simply ignore the "likelihood of success" criterion whenever considering whether to grant an anti-suit injunction, treating satisfaction of the *China Trade* factors itself as a demonstration of success on the merits.  (Def. Br. 12).  *See also E. & J. Gallo Winery* v. *Andina Licores S.A.*, 446 F.3d 984, 990-91 (9th Cir. 2006) ("'To the extent the traditional preliminary injunction test is appropriate, ... we only need address whether [the injunction seeker] showed a significant likelihood of success on the merits. The merits in this case, however, are ... about ... whether [the injunction seeker] has demonstrated that the factors specific to an anti-suit injunction weigh in favor of granting that injunction here.'" (quoting *Karaha Bodas Co. LLC* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 n.19 (5th Cir. 2003)) (alterations in original)).

Here, however, a narrower, more compelling approach presents itself. The "merits" that Defendants seek to vindicate through this injunction are, properly understood, their right to arbitrate the negligent misrepresentation issue without the impairment of that right threatened by the claims in the Greek action whose legal substance is identical to the negligent misrepresentation dispute.  That right was secured by the Court's August 20, 2012 Order, and the Court has already relied on that right in the *China Trade* analysis above.  The only question remaining regarding whether Defendants

will succeed on the "merits" here — whether they will preserve their right to arbitrate — is whether they can obtain the injunction necessary to prevent the litigation that endangers that right.  Thus, unlike the categorical rule adopted in the Ninth and Fifth Circuits, the Court concludes that in this narrow circumstance — when a party who has won a court order reserving a claim for arbitration applies for an anti-suit injunction against an action that allegedly infringes on that claim — it is appropriate to consider the movant's likelihood of success on the merits by assessing whether it can satisfy the *China Trade* test.  A movant who can do so has, by the same token, prevailed on the merits of his claim: he has vindicated his right to reserve the relevant claim from adjudication outside the arbitral panel.

The Court has already concluded that Defendants have satisfied the *China Trade* test with respect to their claims arising from Greek statutes and international conventions relating to international shipping.  Accordingly, the Court also finds that Defendants have demonstrated a likelihood of success on the merits.

### c. Tailoring the Injunction

"The injunction must also specify what activities are enjoined."  *Amaprop Ltd.* v. *Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853 (PGG), 2010 WL 1050988, at *9 (S.D.N.Y. Mar. 23, 2010).  Plaintiff will be enjoined from prosecuting or commencing any action in Greece concerning any claim whose substance derives from allegations of negligent misrepresentation.  This is the normal form of relief in foreign anti-suit injunctions.  *See, e.g.*, *id.*; *Storm LLC* v. *Telenor*

*Mobile Commc'ns AS*, No. 06 Civ. 13157 (GEL), 2006 WL 3735657, at *14 (S.D.N.Y. Dec. 15, 2006).  This injunction should be construed to apply to: the negligent misrepresentation claim itself, as pled in the Original Writ in the Greek action; Plaintiff's claim for violation of duties imposed by international conventions concerning Greek shipping; and Plaintiff's claim for violation of duties imposed by Greek regulatory statutes.  Plaintiff is free, as discussed above, to litigate in the Greek action its claim arising from Greece's consumer protection statute.

This injunction will remain in place until the arbitral panel renders an award.  *See Ibeto Petrochemical Indus. Ltd.* v. *M/T Beffen*, 475 F.3d 56, 65 (2d Cir. 2007).

## CONCLUSION

Defendants applied for a preliminary anti-suit injunction against the pending Greek action.  The Greek action contains three classes of claims: one arising from the Greek consumer protection law; one arising from international conventions relating to international shipping, as ratified into Greek law; and one arising from Greek regulatory statutes concerning classification societies. The Court concludes that the *China Trade* test is satisfied with respect to the latter two claims, and not satisfied with respect to the first.  The Court also finds that Defendants have satisfied the traditional test for preliminary injunctions with respect to those two claims.

Defendants' motion for a preliminary anti-suit injunction is GRANTED IN PART, as detailed above.  The Clerk of Court is respectfully directed to close the motion pending at docket entry 20.

SO ORDERED.

Dated:      September 23, 2013
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge