UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
BAILEY SHIPPING LIMITED,                        :
                                                :
                                    Plaintiff,  :
                                                :     12 Civ. 5959 (KPF)
                v.                              :
                                                :     OPINION AND ORDER
AMERICAN BUREAU OF SHIPPING, *et al.*,          :
                                                :
                                    Defendants. :
                                                :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 28, 2014

KATHERINE POLK FAILLA, District Judge:

Bailey Shipping Limited unilaterally sought to withdraw, without prejudice, a claim for negligent misrepresentation that is the subject of a pending arbitration. The respondents in that arbitration, the American Bureau of Shipping and its Greek affiliate, ABS Hellas (collectively, "ABS"), objected. The arbitral panel concluded that Bailey was not permitted to make such a withdrawal without ABS's consent.

Bailey now asks this Court to vacate that arbitral decision and permit it to withdraw its claim. Whether the panel's decision is correct on the merits is a close and an interesting question, but the Court may not consider it. Because the arbitral award at issue was not final, the Court lacks jurisdiction to consider Bailey's motion to vacate it.

## BACKGROUND[1]

The complicated history of this litigation and the underlying relationship between the parties is fully set out in the Court's Order of September 23, 2013. (Dkt. #29, *available at* 2013 WL 5312540 (S.D.N.Y. Sept. 23, 2013)). In the interest of clarity, the Court will provide a brief summary of the relevant facts before proceeding to a description of the dispute pending before the Court.

### A.   History of the Action

In August 2007, Bailey Shipping Limited, a Marshall Islands corporation, bought an international shipping vessel named the M/V MAX from non-party Wave Navigation. (Dkt. #29 at 2). The vessel had several times been surveyed and classified as fit for sea travel and bulk carriage by ABS and ABS Hellas, both international classification societies. (*Id.* at 4). Bailey alleges that the MAX was in far worse condition than its classification certificates represented. (Dkt. #1 at ¶¶ 35-41).

Bailey filed suit against ABS in the Piraeus Multimember Court of First Instance in Piraeus, Greece, in April 2012, alleging multiple claims falling into distinct categories: negligent misrepresentation, violation of the Greek consumer protection statute, violation of duties arising out of certain international conventions concerning shipping, and violation of duties arising

---

[1]   The facts set forth in this Opinion are drawn from the parties' previous submissions to the Court and from the exhibits attached to counsel's declarations in connection with the instant motion (referred to using the convention "[Name] Decl., Ex."). Plaintiff's opening brief is referred to as "Pl. Br."; Defendants' opposition brief is referred to as "Def. Opp."; and Plaintiff's reply brief is referred to as "Reply Br."

from certain domestic Greek statutes governing the work of classification societies like ABS. (Dkt. #29 at 5-8).[2]

Several months later, ABS filed a demand for arbitration, arguing that the action was subject to the mandatory arbitration agreement contained in the certificates ABS had issued regarding the MAX. (Dkt. #8-9). Bailey then filed the Complaint in this action on August 3, 2012, seeking a declaratory judgment that it was not bound by any arbitration agreement with ABS. (Dkt. #1). ABS opposed and cross-moved to compel arbitration. (Dkt. #4-6). The Court ruled on August 20, 2012, that the arbitration clause bound Bailey to the extent that Bailey relied on the content of the certificates to prove its case and, in consequence, that any claim of negligent misrepresentation against ABS with respect to that content was necessarily reserved to arbitration. (Dkt. #13). The Court made no ruling at that time regarding the pending litigation in Greece or the extent to which individual claims in that litigation overlapped with or were distinct from a negligent misrepresentation cause of action. (*Id.*). One week later, the Court stayed this action pending the arbitration. (Dkt. #14).

Bailey sought to stay the arbitration itself during the pendency of the Greek litigation; the arbitral panel denied this application. (Dkt. #29 at 12-13). The Greek litigation continued to unfold. Then, on September 18, 2013, ABS filed an order to show cause why a foreign anti-suit injunction should not issue

---

[2] Bailey originally filed two separate actions against ABS in Greece; one was subsequently withdrawn. The other was modified by the filing of an Amended Writ. (Dkt. #29 at 5 n.2).

prohibiting Bailey from prosecuting the action in Greece, on the theory that the Greek litigation could not stand independent of the negligent misrepresentation claim the Court had ruled reserved to arbitration, and so should not proceed until that arbitration concluded. (Dkt. #20).

After briefing (Dkt. #21-28) and a lengthy oral argument (Dkt. #30), the Court ruled on September 23, 2013, that the arbitration would be dispositive of Bailey's duty-based claims arising from the international conventions and Greek regulatory statutes and so it was appropriate to enjoin Bailey from pursuing those claims in the Greek litigation. (Dkt. #29 at 24-27). The Court concluded, in contrast, that the claim under Greece's consumer protection law was sufficiently independent of the issues to be decided in the arbitration that Bailey should not be prohibited from pursuing that claim in Greek court even while the arbitration unfolded. (*Id.* at 27-30).

**B.    The Instant Dispute**

On August 9, 2013, before ABS moved for the anti-suit injunction discussed above, Bailey had informed ABS and the arbitral panel that it intended to withdraw the negligent misrepresentation claim that the Court had held reserved to arbitration and that, in consequence, the arbitration proceeding was terminated. (Lennon Decl., Ex. 2).[3]

ABS interposed an objection four days letter. It reasoned that because the "issue ha[d] been joined," Bailey's attempt at withdrawal was "as improper

---

[3]    To be clear, Bailey explicitly sought withdrawal *without* prejudice to its ability to reinstate the claim later, "pending the outcome of the Greek actions." (Ewig Decl., Ex. 6).

4

in arbitration as it would be under the Federal Rules of Civil Procedure 41(a)(2) and 41(c)" in the absence of ABS's consent.  (Lennon Decl., Ex. 3 at 1).  ABS wrote the panel again on August 19, 2013, once more opposing Bailey's attempt to withdraw on the grounds that "ABS [wa]s entitled to a resolution of the negligent misrepresentation claim *in New York on the merits*."  (Lennon Decl., Ex. 4 at 1 (emphasis in original)).

On September 17, 2013, the arbitral panel issued what it called an "interim award" (the "Interim Award").  (Lennon Decl., Ex. 5 at 2).  In it, the panel concluded that

> Bailey's withdrawal of its claim does not divest the Panel of its authority.  The posture of the arbitration is akin to a declaratory proceeding whereby ABS seeks a ruling from the Panel that it is not liable to Bailey for the alleged claim of negligent misrepresentation. Accordingly, ABS is entitled to a ruling from this Panel.

(*Id.* at 4).  The arbitral panel then directed Bailey to comply with existing discovery orders and file a statement of its claim.  (*Id.*).

On December 10, 2013, Bailey moved to vacate the Interim Award.  (Dkt. #33-35).  ABS opposed this motion (Dkt. #36-37), and Bailey filed a reply in further support (Dkt. #38).

## DISCUSSION

**A.     Applicable Law**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (Chapter One), 201-208 (Chapter Two), 301-307 (Chapter Three), does not provide a freestanding grant of jurisdiction for federal courts to review arbitral awards.  *Durant,*

*Nichols, Houston, Hodgson & Cortese-Costa, P.C.* v. *Dupont,* 565 F.3d 56, 63 (2d Cir. 2009). It does, however, provide federal jurisdiction over those arbitral awards that are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (frequently referred to as the "New York Convention"). 9 U.S.C. § 203. The New York Convention applies here because Bailey and ABS Hellas are both foreign corporations. *Scandinavian Reins. Co. Ltd.* v. *Saint Paul Fire & Marine Ins. Co.,* 668 F.3d 60, 71 (2d Cir. 2012); *see also Yusuf Ahmed Alghanim & Sons* v. *Toys "R" Us, Inc.,* 126 F.3d 15, 19 (2d Cir. 1997) (observing that the New York Convention applies to arbitrations "'involving parties domiciled or having their principal place of business outside the enforcing jurisdiction'" (quoting *Bergesen* v. *Joseph Muller Corp.,* 710 F.2d 928, 932 (2d Cir. 1983)).

Because the Interim Award was entered in the United States, the standard, domestic provisions of the FAA, which are codified in Chapter One of that statute, also apply to the extent they do not conflict with the New York Convention or its enabling legislation, both of which are codified in Chapter Two. *Phoenix Aktiengesellschaft* v. *Ecoplas, Inc.,* 391 F.3d 433, 435 (2d Cir. 2004).

**B. Analysis**

### 1. The Arbitral Award Is Neither Final Nor Within an Exception to the Finality Requirement

Stated simply, irrespective of the merits of Bailey's challenges to the Interim Award, this Court lacks jurisdiction to consider Bailey's petition. As

relevant here, courts have jurisdiction to review those arbitral awards that are "final" and "definite." 9 U.S.C. § 10(a)(4). As the Second Circuit has explained:

> Under the Federal Arbitration Act, a district court does not have the power to review an interlocutory ruling by an arbitration panel. The language of the Act is unambiguous: it is only after an award has been made by the arbitrators that a party can seek to attack any of the arbitrators' determinations in court, by moving either to vacate the award, or to modify or correct it.

*Michaels* v. *Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) (internal citations omitted).[4]

"Generally, to be final and definite, an arbitration award must fully determine each issue so that no further proceedings are necessary to finalize the parties' obligations under the award." *Emp'rs' Surplus Lines Ins. Co.* v. *Global Reins. Corp.-U.S. Branch*, No. 07 Civ. 2521 (HB), 2008 WL 337317, at *6 (S.D.N.Y. Feb. 6, 2008) (internal quotation marks omitted). The Interim Award clearly fails to satisfy this general rule. The relationship between the parties has come no closer to crystallization by means of the Award; to the contrary, ABS's liability to Bailey remains completely uninvestigated.

---

[4] *See generally Greenberg* v. *Bear, Stearns & Co.*, 220 F.3d 22, 26-27 (2d Cir. 2000):

> The FAA and federal case law supply various bases for review of an arbitral award. Section 10 itself lists several grounds, including fraud in procuring the award; corruption, partiality, or prejudicial misconduct on the part of the arbitrators; abuse of power; and failure to render "a mutual, final, and definite award." 9 U.S.C. § 10(a). Judicial interpretation has added additional grounds, such that awards may be vacated under limited circumstances where the arbitrators manifestly disregarded the law, *see DiRussa* v. *Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997), or where enforcement would violate a "well defined and dominant public policy," *IBEW Local 97* v. *Niagara Mohawk Power Corp.*, 143 F.3d 704, 717 (2d Cir. 1998) (internal quotation marks omitted).

7

And while Bailey is correct that several exceptions exist to the general rule requiring finality, none applies here. (*See* Pl. Br. 5-6; Reply Br. 4-5). The arbitral panel correctly termed the award an "interim award" (Lennon Decl., Ex. 5 at 2), because it had no effect other than to order Bailey to adhere to the panel's existing scheduling order. This award was not "intended by the arbitrators to be their complete determination of all claims submitted to them." *Michaels*, 624 F.2d at 413. Indeed, the arbitrators intended precisely the opposite.

The progress of the arbitration at issue distinguishes the instant case from those in which courts have recognized exceptions to the finality requirement. This was not a case, for instance, in which the parties voluntarily submitted a severable portion of their dispute to the arbitral panel for separate, final disposition. *See Trade & Transp., Inc.* v. *Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991); *see also Universitas Educ., LLC* v. *Nova Grp., Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2012 WL 2045942, at *1 (S.D.N.Y. June 5, 2012) ("[C]onclusive awards as to fewer than all claims rendered pursuant to voluntary bifurcation agreements are final for purposes of enforcement."), *aff'd*, 513 F. App'x 62 (2d Cir. 2013) (summary order). Nor was the interim award one requiring "specific action" outside the arbitration itself and thus constituting final, equitable relief with respect to a specific issue. *See Zeiler* v. *Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007); *see also Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU, AFL-CIO* v. *CNH Mgmt. Associates, Inc.*, 669 F. Supp. 632, 633-34 (S.D.N.Y. 1987) ("[A]n arbitrator has the power

8

to protect the objects of the controversy pending final resolution" and "confirmation is available … [for] such order[s]…."). Nor does this award dispose of a portion of the dispute regarding which there can be no real disagreement, leaving the balance of the dispute for later adjudication. *See Metallgesellschaft A.G.* v. *M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986) ("Because the award in the instant case finally and conclusively disposed of a separate and independent claim and was subject to neither abatement nor set-off, the district court did not err in confirming it.").

Bailey contends that "the arbitration panel in this case finally and conclusively disposed of the issue of Bailey's withdrawal of the negligent misrepresentation claim," and so the Court should review the panel's decision regarding that issue alone. (Reply Br. 5). Preliminarily, it is unclear that Bailey's underlying factual premise is correct.[5] In any event, Bailey's contention re-frames (erroneously, as it happens) the scope of the arbitration.

---

5    The Second Circuit has explained that "the finality of an arbitral ruling 'must be assessed in light of' the *functus officio* doctrine," which delimits an arbitrator's authority over the issues submitted to him. *SH Tankers Ltd.* v. *Koch Shipping Inc.*, No. 12 Civ. 0375 (AJN), 2012 WL 2357314, at *5 (S.D.N.Y. June 19, 2012) (quoting *Trade & Transp., Inc.*, 931 F.2d at 195). The doctrine provides that "once arbitrators have finally decided the submitted issues … their authority over those questions is ended." *Trade & Transp.*, 931 F.2d at 195. Conversely, "if an arbitrator is not *functus officio* as to an interim award, then the interim award is not subject to judicial review." *Emp'rs' Surplus Lines Ins. Co.*, 2008 WL 337317, at *4.

Absent some indication that the arbitral panel's decision regarding Bailey's withdrawal is intended to be final, and is in fact insulated from later reconsideration, the Court cannot conclude that the panel is indeed *functus officio* with respect to the Interim Award. In sharp contrast to the *Home Insurance* case on which Bailey relies — where the panel ordered one party to pay a sum of money to the other party immediately — neither the language nor the substance of the Interim Award imposes any bar, practical or rhetorical, on the panel's ability to reconsider their decision. (*See* Pl. Br. 5-6 (citing *The Home Ins. Co.* v. *RHA/Pennsylvania Nursing Homes, Inc.*, 127 F. Supp. 2d. 482 (S.D.N.Y. 2001))).

ABS demanded arbitration of Bailey's negligent misrepresentation claim against it, not of whether the arbitration was viable in the face of Bailey's withdrawal. (Lennon Decl., Ex. 1). The arbitral panel was convened to determine whether ABS was liable to Bailey and, if so, for how much. The Interim Award, reflecting the panel's decision that the arbitration should continue, was no more than a "determination[] required for furtherance of the arbitration," *Zeiler*, 500 F.3d at 169 n.11, and, more pointedly, was not a resolution of any claim at issue before the panel. The Court does not have jurisdiction over an "interim procedural ruling" of this kind. *See Accenture LLP v. Spreng*, 647 F.3d 72, 77 (2d Cir. 2011) (concluding that an arbitral order denying leave to amend claims was an "interim procedural ruling, not an arbitration award," because "it does not 'finally and definitely' dispose of [defendant]'s fraud claim"); *cf. SH Tankers Ltd.*, 2012 WL 2357314, at *5 (ruling that a panel's decision to stay an arbitration pending one party's compliance with arbitration rules was "a nonfinal procedural order that this Court has no power to review"). This award was, if anything, a "'segment[] of a future conclusive award,'" because it directed the parties to satisfy the procedural requirements of the arbitration and proceed with discovery. *In re Ins. Co. of N. Am.*, No. 08 Civ. 7003 (HB), 2008 WL 5205970, at *7 (S.D.N.Y. Dec. 12, 2008) (quoting *Zeiler*, 500 F.3d at 169 n.11), *vacated on other grounds*, 2009 WL 2381854 (S.D.N.Y. July 29, 2009), *aff'd sub nom. Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122 (2d Cir. 2010). The character and effect of Bailey's

withdrawal simply has no analytical status independent from Bailey's liability claims against ABS.

## 2. The Collateral Order Doctrine Does Not Apply

In the alternative, Bailey suggests that the Court has jurisdiction to consider its petition under the collateral order doctrine. (Pl. Br. 6). This argument, however, misperceives the scope of that doctrine. As articulated by the Supreme Court:

> The collateral order doctrine, identified with *Cohen* v. *Beneficial Industrial Loan Corp.*, [337 U.S. 541] (1949), is "best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." [*Digital Equip. Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Cohen*)]. Whereas 28 U.S.C. § 1291 "gives courts of appeals jurisdiction over 'all final decisions' of district courts" that are not directly appealable to us, *Behrens* v. *Pelletier*, [516 U.S. 299, 305] (1996), the collateral order doctrine accommodates a "small class" of rulings, not concluding the litigation, but conclusively resolving "claims of right separable from, and collateral to, rights asserted in the action," *ibid.* (internal quotation marks omitted). *The claims are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."* *Cohen, supra*, at 546.

*Will* v. *Hallock*, 546 U.S. 345, 349 (2006) (emphasis added). The Court has repeatedly stressed that this "'narrow' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equip. Corp.*, 511 U.S. at 868 (citing *Richardson-Merrell, Inc.* v. *Koller*, 472 U.S. 424, 436 (1985)); *see also id.* ("We have accordingly described the conditions for

11

collateral order appeal as stringent, and have warned that the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a 'particular injustic[e]' averted, by a prompt appellate court decision." (internal citations omitted)).

Jurisdiction is proper under the collateral order doctrine only for those orders that "[i] conclusively determine[ ] the disputed question; [ii] resolve[ ] an important issue completely separate from the merits of the action; and [iii] [are] effectively unreviewable on appeal from a final judgment." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 105-06 (2009) (internal quotation marks omitted). Even then, a court must consider "whether the issue on appeal is an important issue of law, the resolution of which may have relevance for future cases." *Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 241 (2d Cir. 2006). Here, too, the Supreme Court has stressed the narrowness of the doctrine:

> The justification for immediate appeal must ... be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes. This requirement finds expression in two of the three traditional *Cohen* conditions. The second condition insists upon important questions separate from the merits. More significantly, the third *Cohen* question, whether a right is adequately vindicable or effectively reviewable, simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement. That a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment ... has never sufficed. *Instead, the decisive consideration is whether delaying review until the entry of final judgment would imperil a*

> *substantial public interest or some particular value of a high order.*
>
> In making this determination, we do not engage in an individualized jurisdictional inquiry. Rather, our focus is on the entire category to which a claim belongs. As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustic[e] averted, does not provide a basis for jurisdiction under § 1291.

*Mohawk Indus.*, 558 U.S. at 107-08 (emphasis added) (internal quotation marks and citations omitted).

"The importance of the right asserted has always been a significant part of [the Supreme Court's] collateral order doctrine." *Lauro Lines S.R.L.* v. *Chasser*, 490 U.S. 495, 502 (1989) (Scalia, J., concurring). Examples of issues that have been found to be sufficiently important include defenses of absolute presidential immunity, qualified immunity, Eleventh Amendment immunity, and double jeopardy. *Will*, 546 U.S. at 352; *see also Blue Ridge Investments, L.L.C.* v. *Republic of Argentina*, 735 F.3d 72, 80 (2d Cir. 2013) ("We previously have held that a denial of foreign sovereign immunity satisfies the conditions necessary to invoke the collateral order doctrine."). In each of these cases, "a substantial public interest" warranted the taking of an immediate appeal." *Id.* at 353; *see also Digital Equip. Corp.*, 511 U.S. at 879 (observing that an interest "qualifies as 'important' in *Cohen*'s sense" if it is "weightier than the societal interests advanced by the ordinary operation of final judgment principles").

Bailey cannot meet the stringent showing demanded by *Cohen* and its progeny. For starters, Bailey cannot demonstrate that the Interim Award is

13

"effectively unreviewable." Bailey contends that any review of the Interim Award, happening months or years in the future, would be a "hollow right." (Reply Br. 6). That is, if Bailey proceeds with arbitration and prevails, the panel's denial of its attempt to withdraw its claim would be moot. (*Id.*). And if Bailey loses at arbitration, review of that later, final arbitral award would be "hollow," inasmuch as vacatur would not vindicate Bailey's alleged right to avoid arbitration entirely. (*Id.*). This disquietude, however, is insufficient under the law. The fact remains that each party to the arbitration has the opportunity, at the conclusion of the arbitration, to seek review. What Bailey is really objecting to is the fact that it cannot exercise that right on the schedule of its choosing.[6]

More fundamentally, Bailey has failed to identify an interest that is sufficiently important to merit consideration through the collateral order doctrine. In tandem with its "hollow right" argument, Bailey notes that if it "cannot move to vacate the Award now … it will not be subject to judicial review after the conclusion of the hearings on the merits" (Pl. Br. 6), and that "vacatur … will save the parties from incurring unnecessary costs and legal fees" (Reply Br. 5). While these may be valid points, they have also been specifically rejected by the Supreme Court as bases for the invocation of the collateral order doctrine.

---

[6]   It is also unclear that the Interim Award is conclusive, in light of the *functus officio* analysis discussed in note 5, *supra*. *See SH Tankers*, 2012 WL 2357314, at *5 ("And as long as the Panel may still revisit the Ruling, it is neither final nor subject to judicial review…. The collateral order doctrine is therefore inapplicable.").

14

In *Will* v. *Hallock*, federal agents who were sued in an action pursuant to *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), challenged the district court's refusal to apply the Federal Tort Claims Act's judgment bar, 28 U.S.C. § 2676. 546 U.S. at 348-49. The Second Circuit affirmed the district court after finding that it had jurisdiction pursuant to the collateral order doctrine; the Supreme Court reversed after concluding that the doctrine did not apply and that it therefore lacked jurisdiction. *Id.* at 353-55. Of note, the Court recognized that several of its prior decisions had invoked the collateral order doctrine where the appealing party was "vindicating or claiming a right to avoid trial." *Id.* at 350. The Court explained, however, that "it is not mere avoidance of a trial, *but avoidance of a trial that would imperil a substantial public interest*, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Id.* at 353 (emphasis added). The Court found that the case before it — which, it bears noting, involved claims of qualified immunity by federal agents — did not implicate a sufficiently important interest. *Id.* at 354-55.

In other cases, the Supreme Court has consistently found that avoidance of litigation, standing alone, was insufficient to merit collateral order review. *See, e.g., Digital Equip. Corp.*, 511 U.S. at 872 ("[A]n erroneous district court decision will, as a practical matter, sound the 'death knell' for many plaintiffs' claims that might have gone forward if prompt error correction had been an option. But if immediate appellate review were available every such time, Congress's final decision rule would end up a pretty puny one, and so the mere

15

identification of some interest that would be 'irretrievably lost' has never sufficed to meet the third *Cohen* requirement."); *Lauro Lines s.r.l.*, 490 U.S. at 499 ("If it is eventually decided that the District Court erred in allowing trial in this case to take place in New York, petitioner will have been put to unnecessary trouble and expense, and the value of its contractual right to an Italian forum will have been diminished. It is always true, however, that there is value … in triumphing before trial, rather than after it, and this Court has declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order. Instead, we have insisted that the right asserted be one that is essentially destroyed if its vindication must be postponed until trial is completed." (internal quotations omitted) (alteration in original)). The Court sees no basis to depart from that precedent in this case.[7]

In addition, Bailey has understandably, but incorrectly, focused on the specific potential for waste in its arbitration with ABS. The Supreme Court has made clear, however, such a focus is too narrow, and that when determining

---

[7] *See also ConArt, Inc.* v. *Hellmuth, Obata + Kassabaum, Inc.*, 504 F.3d 1208, 1211 (11th Cir. 2007):

> Besides, the "waste not" reasoning in favor of interlocutory review that ConArt urges on us is another argument that is too strong for its purpose. If we base jurisdiction on the desire to avoid the risk of arbitration proceedings that may later be held to be unnecessary, every order refusing to enjoin arbitration would be reviewable. Nothing would be left of § 16(b) of the FAA. Applying the *Cohen* collateral order doctrine to permit an appeal that § 16(b) specifically prohibits, as ConArt urges, would amount to using a judge-made doctrine to erase an unequivocal congressional command. That we will not do.

16

whether to apply "the blunt, categorical instrument of § 1291 collateral order appeal," *Digital Equip. Corp.*, 511 U.S. at 883, "we do not engage in an individualized jurisdictional inquiry. Rather, our focus is on the entire category to which a claim belongs." *Mohawk Indus.*, 558 U.S. at 108 (emphasis added) (internal quotation omitted). To permit Bailey an appeal under the collateral order doctrine would effectively permit appeals from interim arbitral awards addressing a host of pre-hearing issues. Thus, the Court must consider the interests that immediate appellate review would vindicate across this entire class of cases. It has, and it has concluded that these interests, while not without merit, do not suffice under *Cohen*.

The Supreme Court has explained that the limited role of the courts in reviewing arbitration "maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Oxford Health Plans LLC* v. *Sutter*, 133 S. Ct. 2064, 2068 (2013) (quoting *Hall Street Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 588 (2008)) (alteration in original). "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* (quoting *Hall Street Assocs.*, 552 U.S. at 588). As the Second Circuit has put it, "[i]t should not be the function of the District Court, after having ordered an arbitration to proceed, to hold itself open as an appellate tribunal to rule upon any questions of evidence that may arise in the course of the arbitration." *Compania Panemena Maritima* v. *J. E. Hurley Lbr. Co.*, 244 F.2d 286, 288 (2d Cir. 1957).

These cardinal principles have all the more force where, as here, an arbitral panel issues a nonfinal procedural order directing the unfolding of an arbitration. Conducting interlocutory review of such an order, just as allowing parties to seek vacatur of orders governing discovery, the introduction of evidence, or hearing format, would challenge the "strong federal policy in favor of arbitration" enshrined in the Federal Arbitration Act. *Arciniaga* v. *Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006); *see also Compania Panamena Maritima*, 244 F.2d at 288. Jurisdiction does not exist and the petition must be dismissed.

## CONCLUSION

For the reasons set out above, Bailey's petition to vacate the arbitral award is DISMISSED. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry 33. The stay in this action imposed on August 27, 2012, remains in place pending arbitration. The parties are hereby ORDERED to submit a joint letter by July 28, 2014, and every 120 days thereafter, advising the Court of the status of the arbitration.

SO ORDERED.

Dated:   March 28, 2014
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge