UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BAILEY SHIPPING LIMITED,   Docket No.
                           12 CIV. 5959(KPF)
                Plaintiff,

    - against –

AMERICAN BUREAU OF SHIPPING,
AMERICAN BUREAU OF SHIPPING HELLAS,
MARTHA C. ADAMS, IOANNIS ARMENAKIS,
CHRISTOS LAMBROU and
PANTELIS KALAPETIS,

                Defendants.
-----------------------------------------------------------------X

MEMORANDUM OF LAW IN OPPOSITION
TO MOTION BY ATLANTC BANK OF NEW YORK
TO QUASH SUBPOENA AND IN SUPPORT OF ABS
CROSS MOTION TO COMPEL ATTENDANCE
AND TO PRODUCE DOCUMENTS AT HEARING

HILL RIVKINS LLP
Attorneys for Defendants
45 Broadway, 15th Floor
New York, NY 10006

Caspar F. Ewig
Michael D. Wilson
 Of Counsel

# TABLE OF CONTENTS

PAGE NO.

Table of Authorities................................................................................ i

THE BACKGROUND AND THE FACTS................................................. 1

    *A. Preliminary Statement*................................................................ 1

    *B. The Court Ordered Arbitration Of*
       *Bailey's Claim Of Negligent Misrepresentation*......................... 2

    *C. The Subpoena Issued to*
       *The Atlantic Bank of New York*................................................. 2

ARGUMENT............................................................................................ 4

    POINT I

    THE BANK HAS NOT MET IT'S BURDEN
    TO QUASH THE ARBITRATION SUBPOENA...................................... 4
        *A. The Subpoena Imposes No Undue Burden on ABNY*............ 4
        *B. The Location of Evidence and Documents*........................ 5

    POINT II

    THE BANK'S MOTION SHOULD BE
    DISMISSED AS MOOT...................................................................... 6

    POINT III

    THE BANK'S MOTION TO QUASH
    IMPROPERLY SEEKS INVOLVE
    THE COURT INTO THE MERITS........................................................ 7

    POINT IV

    THIS COURT HAS JURISDICTION
    TO COMPEL ATTENDANCE OF
    A SUBPOENAED NON PARTY WITNESS........................................ 8

Conclusion............................................................................................ 10

# TABLE OF AUTHORITIES

Page No.

*Church of Scientology of California v. U.S.*
506 U.S. 9, 113 S.Ct. 447 (1992).............................................. 7

*Concord Boat Corp. v. Brunswick Corp.*
169 F.R.D. 44 (S.D.N.Y. 1996, Edelstein, J)..................................... 4

*Hay Group, Inc. v. E.B.S. Acquisition Corp.*
360 F.3d 404 (3rd Cir. 2004)..................................................... 6

*In re Security Life Ins. Co. of America*, 228 F.3d 865 (8th Cir. 2000)... 7

*Jones v. Hirschfeld*
219 F.R.D. 71 (S.D.N.Y. 2003, Gorenstein, J)................................. 4

*Kirchner v. Klemons*
2005 WL 1214330, (S.D.N.Y 2005, Carter, J)................................. 4

*Life Receivables Trust v. Syndicate 102 at Lloyd's of London*
549 F.3d 210 (2nd Cir. 2008)................................................. 6

*Manolis v. Brecher*
2013 WL 4044808, 3 (S.D.N.Y. 2013, Pitman, MJ)......................... 4

*M.L.C., Inc. v. North American Philips Corp.*
109 F.R.D. 134 (D.C.N.Y. 1986)................................................. 6

*Odfjell Asa v. Celanese AG*
348 F.Supp.2d 283 (S.D.N.Y. 2004), *aff'd* 430 F.3d 567 (2nd Cir. 2005).... 8, 9

*Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567 (2nd Cir. 2005)............... 4, 8

*Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*
346 F.3d 530 (C.A.5 (La.) 2003)................................................. 2

## Other Authorities

Domke *Commercial Arbitration* § 32:2.........................................9

Federal Arbitration Act ("FAA") 9 USCA §7....................................3, 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
BAILEY SHIPPING, LIMITED,

                              Plaintiff

  - against –                                      INDEX NO.:

AMERICAN BUREAU OF SHIPPING, INC.
AMERICAN BUREAU OF SHIPPING HELLAS,        12 CIV. 5959 (KPF)
MARTHA C. ADAMS, IOANNIS ARMENAKIS,
CHRISTOS LAMBROU and PANTELIS KALAPETIS

                              Defendants.
-----------------------------------------------X

## THE BACKGROUND AND THE FACTS

### *A. Preliminary Statement*

This memorandum is submitted in opposition to the motion by the Atlantic Bank of New York ("ABNY") and in support of American Bureau of Shipping's (hereinafter "ABS") cross motion to compel the attendance of an officer of Atlantic Bank of New York (the Bank) to give testimony at a hearing to be held in the arbitration of Bailey Shipping, Petitioner ("Bailey") and American Bureau of Shipping, et al. ("ABS") in response to the arbitrators' subpoena served upon the Bank and, at the time of the hearing, to the produce documents called for in the subpoena.

The present motion concerns ABS' right to the testimony of a witness to determine the answer to a central question that is simple but crucial to its defense in arbitration: whether a check drawn on a New York bank which is alleged to evidence payment of the purchase price of a vessel was ever in fact negotiated. ABS is clearly entitled to this testimony, as well as ancillary testimony on issues raised by the Bank's opposition to the subpoena. Because of the fierce resistance of Bailey, and now of ABNY and its parent, the New York Commercial Bank, to permitting this testimony it is unfortunately necessary to set forth some detail of the background and timeline of this dispute.

1

## B. The Court Ordered Arbitration Of
### Bailey's Claim Of Negligent Misrepresentation

On August 20, 2013, the Court ordered arbitration of Bailey's claim against ABS of negligent misrepresentation (Docket # 13), ruling on Bailey's application for a declaratory judgment that it was not bound by any arbitration agreement with ABS, and on ABS' cross-motion to compel arbitration.

Through investigation and document production in the arbitration, ABS has developed evidence that strongly indicated that Bailey, the purported purchaser of the vessel, and Wave Navigation, Ltd. ("Wave") the purported seller, were both companies controlled by a Greek company, Overseas Maritime Enterprises ("OME") and that the "sale" of the vessel was not an arms-length transaction, but an intercompany asset transfer. A claim of negligent misrepresentation requires proof of the claimant's reliance on the representation, which would not exist if both parties to the transaction were related. *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.* 346 F.3d 530 (5th Cir.2003); Restatement 2d *Torts* §552. Accordingly, ABS requested the arbitration panel to compel Bailey to produce proof of payment of the purchase price of the vessel (Ex. 1) and Bailey resisted this request (Ex. 2). The arbitrators ordered production of the proof of payment (Ex. 3) and Bailey and Bailey confirmed it does not possess copy of the reverse of the check, but would try to obtain it from the Greek bank (Ex. 4).

## C. The Subpoena Issued to
### The Atlantic Bank of New York

ABS thereupon requested that the Panel issue a subpoena <u>duces tecum</u> to Atlantic Bank of New York (Ex. 5). By this subpoena, ABS sought to determine the answer to a simple and highly relevant issue of whether the check produced by Bailey as proof of payment of the vessel's purchase price was actually paid.

Bailey resisted the request for issuance of the subpoena vehemently (Ex. 6). On February 6, 2014, Bailey forwarded copy of the reverse of a check said to be the check for the purchase price of the vessel, which check Bailey said they had obtained from National Bank of Greece (Ex. 7). The Panel issued the subpoena to the Bank on February 7, 2014 (Ex. 8) and it was served on Atlantic Bank.

New York Commercial Bank (successor to Atlantic Bank of New York) (hereinafter collectively referred to as "ABNY") communicated with ABS' counsel in response to the subpoena, advising their search was underway and pointing out an error in the identification of the account number of its depositor, National Bank of Greece, and requested a corrected subpoena (Ex 9). The correction was made and a corrected subpoena was received by The Bank.

By letter of March 21, 2014, ABNY responded to the subpoena, advising that "a search was made of the Bank's Database" and producing documents in its possession responsive to each of the 5 enumerated requests in the corrected subpoena (Ex. 10). The documents produced consisted of the August (Ex. 10-A) and September 2007 (Ex. 10-B) statements of the National Bank of Greece's account at ABNY, and copy (Ex. 10-C) of an August 22, 2007 SWIFT message "Advice of Cheque". In response to the subpoena's request no. 1 for production of copy of both sides of check 2587195, the bank responded "No record." Similarly, ABNY stated it had "no record" in response to the subpoena's request for documents reflecting the receipt of check 2587195 or of the transfer of any funds with regard to the check.

At the instruction of the arbitration Panel Chairman John Ryan, Esq. (Ex. 11), ABS counsel communicated with ABNY representatives to schedule a mutually convenient date for a hearing at which the bank's testimony would be taken (Ex. 12). ABS counsel advised ABNY the hearing should probably not exceed 1½ hours in length.

In an entirely separate production on April 2, 2014, ABNY forwarded to ABS counsel a letter from National Bank of Greece concerning the subpoena which enclosed copy of the check together with the reverse side (identical to the copy previously produced by Bailey) and copy of a SWIFT message regarding issuance of check 2587195 (Ex. 13).

The crux of the present issue concerning ABNY is made clear in the parties' response to the arbitration Chairman's March 25, 2014 inquiry as to whether a hearing was required for the testimony of the Bank (Ex. 14). Bailey's counsel urged the panel by e-mail of April 4, 2014 (Ex. 15) that a hearing was unnecessary since the documents produced by ABNY prove payment of $10 million on Bailey's behalf by "SWIFT electronic funds transfer." By e-mail of the same date, ABS' counsel. in accordance with the requirements of Federal Arbitration Act, advised the Panel that it remained of the belief that a hearing for testimony was necessary as the documents produced by ABNY indicate that, while National Bank of Greece wrote a check and advised ABNY that it had

3

done so (via the "Advice of Cheque" SWIFT message), no evidence exists that the check was presented to ABNY for payment or debited against the National Bank of Greece's account at the Bank (Ex 16).

## ARGUMENT

### POINT I

### THE BANK HAS NOT MET IT'S BURDEN TO QUASH THE ARBITRATION SUBPOENA

#### A. *The Subpoena Imposes No Undue Burden on ABNY*

ABNY's argument that appearing for testimony at a hearing is "burdensome" is frail. To the extent the argument seeks to limit the bank's duties to mere production of documents, it is in conflict with the stated requirements of the Federal Arbitration Act ("FAA") 9 USCA §7 which does not provide for pre-hearing discovery of third parties. *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567 (2nd Cir. 2005), Furthermore, a simple, defined area of testimony is sought and ABS' counsel advised ABNY that the testimony should not exceed 1½ hours (see Ex 12). For NYCB to engage counsel to research the background of the underlying dispute in this arbitration and prepare and file the instant motion to avoid a morning's "burdensome" is disingenuous.

The cases cited by ABNY are inapposite. In *Concord Boat Corp. v. Brunswick Corp.* 169 F.R.D. 44 (S.D.N.Y.,1996, Edelstein, J) the Court rightly found that requiring an investment banker to produce virtually every document it had created for a customer over the prior ten years was overly broad and burdensome. Similarly, after noting that issuance of a protective order or granting a motion to quash a deposition are the exception rather than the rule, the Court in *Jones v. Hirschfeld* 219 F.R.D. 71 (S.D.N.Y.,2003, Gorenstein, J) quashed the deposition of the corporation's president on the ground of it being burdensome when the president had no personal knowledge of a sexual harassment settlement and the desired testimony could have been given by a lower level employee.

To the extent *Manolis v. Brecher* 2013 WL 4044808, 3 (S.D.N.Y.,2013, Pitman, MJ) or *Kirchner v. Klemons* 2005 WL 1214330, (S.D.N.Y 2005, Carter, J) is applicable, ABS has certainly met its burden to show the relevance and necessity of ABNY's testimony to the issue of the vessel's purchase.

In summary, requiring the person who searched the Datatbases and produced the documents

already delivered to ABS' counsel to now testify as to their meaning for less time than taken on this motion, is neither burdensome, nor overbroad.

### B. The Location of Evidence and Documents

All of the "difficulties" set out in the Bank's moving papers are red herrings.

Contrary to ABNY's argument, the subpoena does not seek any Greek documents nor is any testimony sought regarding events in Greece about which ABNY could be expected to have no knowledge. In its March 21, 2014 letter (Ex. 10) ABNY produced copies of the statements of the National Bank of Greece's account at ABNY and of the "Advice of Cheque" presumably transmitted from National Bank of Greece. The response did not contain a copy of check 2587195, and ABNY's testimony is required to authenticate the documents it already produced and, it is expected, will clarify what the documents appear to indicate: i.e. that the $10 million check was written by National Bank of Greece, (or referred to in the Swift "Advice of Cheque" message), but the check was never presented to NYCB for payment, as evidenced by the check's absence on the account statements and NYCB's inability to produce a copy of the check in its March 21 response.

ABNY's conflation of its March 21 response (Ex. 10) with its forwarding of the National Bank of Greece's inexplicably voluntary response to the subpoena in April (Ex. 13) by producing them together as a single exhibit on this motion (See Movant's Ex. E) attempts to confuse ABNY's own production <u>of its records</u> with the April forwarding of documents received from the National Bank of Greece. The documents produced by ABNY as part of its March response are clearly ABNY's documents, the result, by its own admission, of its research into "the Bank's Databases". It is these few documents ABS wishes to authenticate and also on which it seeks to have the Bank testify. For example, the August 31, 2007 Statement of Account (Ex. 10-A), at page 4, lists check transactions in National Bank of Greece's account at ABNY in order of check numbers. The check at issue, check 2587195 is conspicuously missing from the list of checks transacted. It is believed the asterisks, particularly the asterisk after check no. 2587196, indicate an interruption in the sequence of checks. The ABNY witness can confirm this.

Further, the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") uses form MT 110 - the Advice of Cheque(s) message - as follows: "Advises or confirms the issuance of

5

a cheque to the drawee bank."[1] Testimony from the ABNY witness is expected to confirm the MT110 Advice of Cheque it produced was merely the National Bank of Greece's notification of the issuance of a check, as stated by SWIFT, and not a "Swift electronic funds transfer" as argued by Bailey (Movant's Ex. O).

Even if there were some documents located places other than New York, these are within the subpoena power of the arbitrators and enforceable by the courts. *Hay Group, Inc. v. E.B.S. Acquisition Corp.* 360 F.3d 404, 411 -413 (3rd Cir. 2004); in fact, control over a document requires its production even though the documents are beyond the jurisdiction of the court. *M.L.C., Inc. v. North American Philips Corp.* 109 F.R.D. 134, 136 (S.D.N.Y.,1986, Kram, J). And such control will be presumed if that entity had previously shown it could obtain and produce the document. *M.L.C., Inc,,* at 138.

## POINT II
### THE BANK'S MOTION SHOULD BE DISMISSED AS MOOT

To the extent that the Bank seeks to quash the subpoena on the grounds that it does not possess information relevant to the arbitration, this objection has been mooted by the Bank's prior voluntary written response to the subpoena and its prior voluntary submission of the relevant banking documents in its possession. Thus, this case differs markedly from *Life Receivables Trust v. Syndicate 102 at Lloyd's of London* 549 F.3d 210, 214 (.2nd Cir. 2008), where the subpoenaed witness had continuously objected to producing the documents and only did so in compliance with a court order that compelled it to produce the documents.

All that is needed now is the testimony of a bank officer to testify as to the efficacy of the documents already produced and the significance of the nonexistence of other documents which the Bank had already previously identified in its response of March 21st. Thus, to the extent that the Bank argues that it has no information "relevant or material" to the dispute, its response and the voluntary production of bank accounts and other documents, has already resolved the issue

---

[1] See List of Swift Standards as Exhibit 17, and the Swift Standard Category 1: Customer Payments and Cheques obtained from the website
    www.10588.com/pub_web/swift/books/us1m/us1m.pdf
as Exhibit 18

by its own actions. Unlike *Church of Scientology of California v. U.S.* 506 U.S. 9, 11, 113 S.Ct. 447, 449 (1992), the Bank's motion to quash on the grounds of relevancy is not directed to the "privacy" or "privilege" protection of any records, so there is nothing for this Court to "undo" as far as materiality or relevance is concerned.

## POINT III
### THE BANK'S MOTION TO QUASH IMPROPERLY SEEKS TO INVOLVE THE COURT INTO THE MERITS

In its narrative, the Bank has also tried to involve the Court into the merits of the underlying dispute that is presently before the arbitrators. Specifically, Movant states, as the bases for its objection that:

1. ABNY has no connection to the disputes which arose in Greece
2. ABNY has knowledge to testify as to anything regarding the National Bank of Greece check beyond what may be stated in documents already produced
3. ABNY's testimony would be entirely irrelevant and unnecessary [to] the arbitration since it concerns alleged violations of Greek law by Defendants in their surveys of and alleged misrepresentations of the condition of the shipping vessel.

The second issue has already been dealt with in Point II above. The remaining issues are attempts by the Bank to involve the Court in the merits of the dispute, and such an attempt is improper. The District Court is not required to make an independent assessment of materiality of information sought before acting to compel compliance with arbitration panel's subpoena. *In re Security Life Ins. Co. of America,* 228 F.3d 865 (8th Cir. 2000).

The Bank also alleges that it is only a "correspondent bank" without either defining that term or providing any agreement or document setting forth the understanding between the banks. The Bank's citation of a case stating the proposition that a correspondent bank is not an agent has no bearing in this dispute, since ABS has never claimed, nor does the subpoena rely on, any finding of agency between ABNY and the National Bank of Greece. ABNY concedes that the National Bank of Greece has "correspondent accounts with ABNY" [2] Indeed, Ms. Martini of ABNY had previously requested that the subpoena be amended to show the proper Bank of

---

[2] See Movant Brief, page 6

7

Greece Account Number. The fact is that ABNY has an account designated by a discrete account number and that the "customer" of that account is the National Bank of Greece. It is against that account, kept by ABNY in New York that the National Bank of Greece wrote a check, and it is concerning that account that the subpoena seeks information.

### POINT IV
### THIS COURT HAS JURISDICTION TO COMPEL ATTENDANCE OF A SUBPOENAED NON PARTY WITNESS

Bailey originally invoked the admiralty jurisdiction of this court to in an unsuccessful effort to enjoin ABS from proceeding with its demand to arbitrate the dispute contained in a complaint filed before the Greek courts. Thus this Court had, and continues to have the requisite subject jurisdiction to supervise and rule on the pending arbitration proceedings, including the enforcement of a service of a subpoena upon a non party to the arbitration as provided in The Federal Arbitration Act, 9 USCA §7, *Stolt-Nielsen SA v. Celanese AG* 430 F.3d 567, 572 (2nd Cir.2005).

The applicable provision of the Federal Arbitration Act, ("FAA") 9 USC §7 reads, in relevant part, as follows:

> **7. Witnesses before arbitrators; fees; compelling attendance**
>
> The arbitrators … may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. …... Said summons shall issue in the name of the arbitrator …., and shall be signed by the arbitrators, …, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States

Where a subpoena calls for the appearance of a non-party to appear before the arbitrators themselves to testify and to produce certain documents, it represents a summons in compliance with the provisions of the FAA §7. *Odfjell Asa v. Celanese AG* 348 F.Supp.2d 283, 286 - 287

8

(S.D.N.Y.,2004, Rakoff, J), *affirmed* 430 F.3d 567 (2nd Cir. 2005). Any doubt was removed by the Court of Appeals in its conclusion at 430 F.3d 581:

> We decide only that [FAA] Section 7 unambiguously authorizes arbitrators to summon non-party witnesses to give testimony and provide material evidence before an arbitration panel, and that is precisely what occurred in this case.

Since the subpoena was signed by the arbitrators and called for the hearing to take place before them, such a summons did not represent a deposition demand in disguise. *Odfjell* 430 F.3d at 579. Furthermore, the fact that any testimony given pursuant to the subpoena would be part of the "record" of the arbitration proceedings, and would be subject to evidentiary rulings, met the conditions of the FAA, even though the hearing was called specifically for the Bank's testimony and that other merits of the underlying dispute might be tried at a later date. *Id.* "[P]ermitting an arbitrator to hold a preliminary hearing that is not a hearing on the merits 'does not transform [the preliminary hearing] into a [prohibited] discovery device.'" Domke *Commercial Arbitration* § 32:2 (quoting *Odfjell Asa v. Celanese AG.* 430 F.3d at 567).

That the hearing is scheduled to take place at the offices of Hill Rivkins does not transform the hearing into a "deposition" or other disallowed proceeding. It is the practice of Panels created pursuant to Rules of the Society of Maritime Arbitrators to hold arbitration hearings at the offices of one of the parties, and both in this and other SMA proceedings, the arbitrators often appear by telephone.[3] A Record is kept of the proceedings (SMA Rule 15), and the witness from the Bank will not have to be recalled, because the testimony given will ultimately be considered by the Panel in rendering their decision. Thus, any implication that the present scheduled hearing is not in conformity with the FAA is simply wrong.

In its papers, Movant makes reference to the fact that it had produced documents that it had received from the National Bank of Greece. In support of that statement, ABNY produced a copy of the letter it received from the National Bank of Greece (Exhibit 13). However, that letter from Greece refers to "Encl 6" meaning that it contained six enclosures, but only 2 pages: the photocopy of the check together with reverse side and a copy of the Swift message were forwarded to ABS. Thus, there are four enclosures to the letter that have not been forwarded, and which ABNY should be compelled to produce at the time of the hearing in compliance with the paragraphs 6 and 7 of the

---

[3] See Exhibit 11

9

subpoena's production demand.

## CONCLUSION

The motion by Atlantic Bank of New York, should be denied in all respects, and ABS' cross motion compelling the attendance of a witness from the Atlantic Bank of New York at a hearing of the arbitration between Bailey and the ABS Defendants together with all documents described in the subpoena and identified in this cross motion be in all respects granted

Dated: New York, NY
May 1, 2014

Respectfully submitted,

HILL RIVKINS LLP
Attorneys for Defendants

By: _____
Caspar F. Ewig

45 Broadway, Suite 1500
New York, New York 10006
Tel.: 212-669-0600
Fax: 212-669-0698/0699
E-mail: cewig@hillrivkins.com