```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
BAILEY SHIPPING LIMITED,                                    :
                                                            :
                              Plaintiff,                    :       12 Civ. 5959 (KPF)
                                                            :
                    v.                                      :       OPINION AND ORDER
                                                            :
AMERICAN BUREAU OF SHIPPING, et al.,                        :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  July 18, 2014

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is a motion by a third party to this action, the Atlantic Bank of New York ("ABNY"), to quash an arbitration subpoena served on it, as well as a cross-motion by Defendants American Bureau of Shipping and its affiliates and employees (collectively, "Defendants" or "ABS") to compel compliance with that subpoena.  For the reasons set out below, ABNY's motion is denied and Defendants' motion is granted.

## BACKGROUND[1]

The complicated history of this litigation and the underlying relationship between the parties is fully set out in the Court's Orders of September 23, 2013 (Dkt. #29, *available at* 2013 WL 5312540 (S.D.N.Y. Sept. 23, 2013)), and March

---

[1] The facts set forth in this Opinion are drawn from the transcript of the August 20, 2012 oral argument ("8/20/12 Tr.," available at Dkt. #15), and from the exhibits attached to counsel's declarations in connection with the instant motion (referred to using the convention "[Name] Ex."). ABNY's opening brief is referred to as "ABNY Br."; Defendants' opening brief is referred to as "Def. Br."; ABNY's reply brief is referred to as "ABNY Reply"; and Defendants' reply brief is referred to as "Def. Reply."

28, 2014 (Dkt. #40, *available at* 2014 WL 1282504 (S.D.N.Y. Mar. 28, 2014)). Familiarity with the facts and the Court's prior rulings is assumed.

The present dispute focuses on a subpoena issued by the arbitral panel commanding ABNY's testimony "as to all banking transactions surrounding and involving" a National Bank of Greece check ostensibly used to acquire the shipping vessel at the heart of this action, as well as "all communications, notations, or instructions" issued by ABNY in connection with it, and further ordering production of relevant documents. (Patel Ex. B, C). ABNY clarified errors in that subpoena on March 4, 2014 (Ewig Ex. 9), and then responded to a corrected subpoena by producing the responsive documents in its possession on March 21, 2014 (*id.* at Ex. 10). These documents consisted of records of the National Bank of Greece's account at ABNY and a copy of an electronic record ostensibly related to the negotiation of the check in question. (*Id.* at Ex. 10-A, 10-B, 10-C).

The arbitral panel inquired of the parties whether a hearing was required despite the production of these records. (Ewig Ex. 14). Defendants insisted that testimony would be required nonetheless to interpret the meaning of the documents. (*Id.* at Ex. 16). Although Plaintiff Bailey argued that such testimony would be unnecessary because "the banking documents speak for themselves" (*id.* at Ex. 15), the panel refused to withdraw the subpoena (Dkt. #54 Ex. 1).

ABNY thereupon filed a motion with the Court to quash the subpoena on April 23, 2014. (Dkt. #42-45). Defendants filed papers opposing that motion

and cross-moving to compel compliance with the subpoena on May 1, 2014. (Dkt. #47-49). ABNY filed a reply in support of its motion to quash and an opposition to Defendants' motion to compel on May 22, 2014 (Dkt. #55-57), and the motions were fully submitted with Defendants' reply brief in further support of their motion to compel on May 28, 2014 (Dkt. #59-60).

## DISCUSSION

### A. Applicable Law

"[I]t is difficult to overstate the strong federal policy in favor of arbitration," and it is a policy courts in this Circuit "have often and emphatically applied.'" *Arciniaga* v. *Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006). "[C]ourts have an 'extremely limited' role in reviewing" the decisions of arbitral panels under any circumstances. *Rich* v. *Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Wall Street Assoc., L.P.* v. *Becker Paribas, Inc.*, 27 F.3d 845, 849 (2d Cir. 1994)). The Supreme Court has explained that the limited role of the courts in reviewing arbitral decisions "'maintain[s] arbitration's essential virtue of resolving disputes straightaway.'" *Oxford Health Plans LLC* v. *Sutter*, 133 S. Ct. 2064, 2068 (2013) (quoting *Hall Street Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 588 (2008)) (alteration in *Oxford Health Plans*).

### B. Application

The Court has already ruled earlier in this action, in the context of an effort to vacate an arbitral decision about the status of the arbitration itself, that the "cardinal principles" of deference that guide federal court review of arbitral decisions do not permit review "of orders governing discovery, the

3

introduction of evidence, or hearing format"; doing so would challenge the "'strong federal policy in favor of arbitration'" enshrined in the Federal Arbitration Act ("FAA"). *Bailey Shipping Ltd.* v. *Am. Bureau of Shipping,* No. 12 Civ. 5959 (KPF), 2014 WL 1282504, at *8 (S.D.N.Y. Mar. 28, 2014) (quoting *Arciniaga,* 460 F.3d at 234). The very same situation is presented here and so the subpoena will remain undisturbed.

Section 7 of the FAA provides that "arbitrators … may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. To begin with, though ABNY at first argued to the contrary (ABNY Br. 8), there is now no question that "arbitrators may, consistent with section 7 [of the FAA], order any person to produce documents so long as that person is called as a witness at a hearing." *Life Receivables Trust* v. *Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008).

Relatedly, ABNY argued that the subpoena at issue here is defective because it refers to an arbitration "proceeding" rather than a "hearing." (ABNY Br. 8). But this is a distinction without a difference, and ABNY unsurprisingly offers no authority in support of the semantic line by which it would cabin the panel's powers under Section 7. ABNY does not and cannot argue that the "proceeding" at which the subpoena commands them to appear would not be held before the arbitration panel charged with adjudicating this dispute. And the Second Circuit has held "that Section 7 unambiguously authorizes

4

arbitrators to summon non-party witnesses to give testimony and provide material evidence before an arbitration panel." *Stolt-Nielsen SA* v. *Celanese AG*, 430 F.3d 567, 581 (2d Cir. 2005).

In addition to its doomed statutory argument, ABNY argues that compliance with the arbitral subpoena would be unduly burdensome because (i) none of its personnel possesses any knowledge beyond that represented in the already-produced documents and (ii) the subject matter of the subpoenas is irrelevant to the dispute. (ABNY Br. 4-8). It seems that at least the first claim may not be true. ABNY insisted in its opening brief on its motion to quash that the documents it produced had been obtained, at great trouble, from the National Bank of Greece. (*Id.* at 3, 4, 6). Later, it acknowledged that those documents in fact were ABNY's own. (ABNY Reply 2 n.2). Given this about-face, ABNY can hardly claim that its personnel have no knowledge on this topic whatsoever: at the very least, they can offer testimony authenticating the documents at issue. But more importantly, ABNY's argument leaps over the first, essential question that the Court must ask before considering any application to disturb the decision of an arbitral panel: is that decision subject to the Court's review?

ABNY eventually argued that proper construction of the statutory phrase "may be deemed material" requires the Court to determine whether the evidence at issue is material in assessing the validity of an arbitral subpoena.[2]

---

[2] ABNY cited as authority for this proposition a 1954 case of this District in which the court quashed an arbitral subpoena because the sought evidence was immaterial. *Oceanic Transp. Corp of Monrovia* v. *Alcoa S S Co.*, 129 F. Supp. 160, 161 (S.D.N.Y.

The Eighth Circuit has squarely rejected ABNY's position as "antithetical to the well-recognized federal policy favoring arbitration, and compromis[ing] the panel's presumed expertise in the matter at hand." *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 871 (8th Cir. 2000).[3]  And indeed the Eighth Circuit's conclusion accords better with the long line of precedents announcing that "[o]nce it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc.* v. *Livingston*, 376 U.S. 543, 557 (1964).  As the Second Circuit has put it, "[i]t should not be the function of the District Court, after having ordered an arbitration to proceed, to hold itself open as an appellate tribunal to rule upon any questions of evidence that may arise in the course of the arbitration." *Compania Panemena Maritima* v. *J.E. Hurley Lbr. Co.*, 244 F.2d 286, 288 (2d Cir. 1957); *see also Stolt-Nielsen S.A.*, 559 U.S. at 686 ("In

---

1954).  Defendants justifiably argue that this old conclusion is owed little respect, given the sea change that has overtaken federal court review of arbitral decisionmaking in the intervening decades.  (Def. Reply 1-2).  After all, only 10 months before the *Oceanic* decision, the Supreme Court voided an agreement to arbitrate a dispute arising under the Securities Act of 1933, finding that "arbitration lacks the certainty of a suit at law under the Act to enforce [a plaintiff's] rights."  *Wilko* v. *Swan*, 346 U.S. 427, 432, 435 (1953).  The *Wilko* decision itself was later overruled by *Rodriguez de Quijas* v. *Shearson/Am. Exp., Inc.*, 490 U.S. 477, 480 (1989), with the Supreme Court recognizing that its prior decision was "pervaded by … the old judicial hostility to arbitration" (internal quotation marks and citation omitted).

[3]   ABNY claims that the Second Circuit "expressly considered and rejected the holding of the Eighth Circuit" in *Life Receivables Trust*, 549 F.3d 210.  (ABNY Reply 6 n.7).  This is simply not the case.  *Life Receivables Trust* considered whether arbitral panels could command pre-hearing documentary production by non-parties, and rejected the Eighth Circuit's conclusion that such a power was "implicit" in the language of Section 7.  *Id.* at 215-18.  The Eighth Circuit's conclusion regarding the propriety of district court second-guessing of an arbitrator's assessment of materiality was a distinct holding, and an issue neither raised nor decided by the Second Circuit in *Life Receivables Trust*.

6

bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."). "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Oxford Health Plans*, 133 S. Ct. at 2068 (quoting *Hall Street Assocs.*, 552 U.S. at 588).

ABNY's argument itself demonstrates why this conclusion must obtain here. The Court has previously concluded that the only claim reserved to arbitration is Plaintiff Bailey's claim of negligent misrepresentation against Defendants. *See Bailey Shipping Ltd.* v. *Am. Bureau of Shipping*, No. 12 Civ. 5959 (KPF), 2013 WL 5312540, at *5 (S.D.N.Y. Sept. 23, 2013); 8/20/12 Tr. 34:15-35:5. A claim of negligent misrepresentation requires the plaintiff to show that he "reasonably relied … to his or her detriment" on a false representation made in violation of the defendant's duty to give correct information. *Hydro Investors, Inc.* v. *Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). Defendants believe that Plaintiff Bailey's purchase of the ship was a sham orchestrated by a parent entity that controls both Bailey and the ship's original seller, and it argues that the relationship between the parties vitiates, as a matter of law, any reliance Bailey claims it placed on Defendants' representations. (Def. Br. 2). By proving that Bailey never actually paid for the ship, Defendants hope to demonstrate that Bailey and the seller were indeed merely instruments of a single entity and thus invalidate Bailey's reliance

7

argument. (*Id.*). ABNY responds that there are "two major flaws in this reasoning": first, that Defendants wrongly interpret the case they cite for the proposition that related parties do not rely on third-party representations in transferring property; and second, that the documentary evidence already produced establishes that the check was paid, rendering Defendants' argument moot. (ABNY Reply 4-5). Because Defendants are wrong, ABNY argues, the evidence they seek is not material.

These are merits arguments. The evidence Defendants seek may ultimately prove ineffectual on legal or factual grounds, as ABNY now contends. But it is for the arbitral panel, not the Court, to construe the law Defendants cite and evaluate the evidence Defendants adduce. The panel has concluded that the evidence subject to this subpoena may affect the outcome of its deliberation. For the Court to conclude otherwise now would require drawing an independent conclusion on the same topic, and this the Court may not do.

At the same time, it is not entirely clear that this is the substance of ABNY's objection. It would be difficult at best to contend, given the foregoing, that the testimony Defendants seek would certainly not be material to the dispute before the arbitral panel. And so ABNY raises several additional objections: ABNY possesses no relevant knowledge beyond the content of the documents it has furnished (ABNY Br. 5-6); ABNY will have to obtain information from a fourth party to answer any questions at the hearing (ABNY Reply 6-7); the hearing may last for a long time (*id.* at 7-8); Defendants may

8

ask irrelevant questions at the hearing (*id.* at 8); and Defendants are really trying to obtain free expert testimony via subpoena, a strategy that should not be permitted (*id.* at 9-10).  Every one of these complaints objects to events that have not yet taken place.  If Defendants ask questions ABNY cannot answer, or subject ABNY to an unduly long hearing, or ask irrelevant questions, or ask questions requiring the formation of an opinion rather than the report of a fact, ABNY's counsel can raise the relevant objection to the panel at that time.  None of these dilemmas has arisen, and so none of ABNY's supplementary objections is even ripe for consideration.

Accordingly, as the arbitral subpoena at issue is a straightforward exercise of the panel's power to command third parties to appear for testimony before it and bring with them documents related to the subject of their testimony, the Court has no basis on which to interfere with the subpoena's effect.

## CONCLUSION

For the reasons set out above, ABNY's motion to quash the subpoena is DENIED and Defendants' motion to compel compliance is GRANTED.  The stay in this action imposed on August 27, 2012, remains in place pending arbitration.  Bailey and ABS are reminded of the Court's requirement in its

March 28, 2014 Order that they submit a joint letter by July 28, 2014, and every 120 days thereafter, advising the Court of the status of the arbitration.

    SO ORDERED.

Dated:    July 18, 2014
           New York, New York

                                          KATHERINE POLK FAILLA
                                          United States District Judge